PEOPLE v RASMUSSEN

Docket No. 130449. Submitted September 10, 1991, at Grand Rapids. Decided November 18, 1991, at 9:00 A.M.

   Lief Rasmussen pleaded nolo contendere in the Manistee Circuit Court, James M. Batzer, J., to a charge of attempting to fit out a ship with the intent of destroying it and defrauding an insurer. The charge related to the defendant's boat, which sank in and was raised from Lake Michigan. The defendant appealed, claiming that the trial court erred in denying his motion for suppression of evidence seized by the police in a search of the boat conducted without a warrant after it was salvaged.

   The Court of Appeals *held:*

   The search and seizure of abandoned property is presumptively reasonable for purposes of the Fourth Amendment because the owner of such property no longer has an expectation of privacy in the property. In this case, before the boat was searched, the defendant had abandoned it when he summoned and accepted the aid of the United States Coast Guard and did not reclaim the boat after its salvage. Accordingly, the search of the boat did not violate the Fourth Amendment, and the trial court did not err in denying the motion for the suppression of the evidence obtained in the search.

   Affirmed.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Dennis M. Swain,* Prosecuting Attorney, for the people.

*Joyce E. Rosenthal,* for the defendant.

Before: SAWYER, P.J., and MURPHY and GRIFFIN, JJ.

MURPHY, J. Defendant pleaded nolo contendere to a charge of attempting to fit out a ship with intent to destroy it and defraud an insurer, MCL

750.104; MSA 28.299; MCL 750.92; MSA 28.287. Defendant tendered the plea on the condition that his right to appeal would be preserved with respect to the trial court's denial of his motion to suppress evidence seized as a result of a search of the sunken vessel. Defendant was sentenced to three years' probation, with the first 150 days to be served in jail, and was ordered to pay $1,000 in costs and fees and $12,184.66 in restitution. Defendant appeals as of right. We affirm.

At 11:50 P.M. on May 27, 1989, the United States Coast Guard Station in Manistee received a telephone call from the owner of the Voyager's Cove Marina concerning the vessel Kismet, which had left the marina earlier that day but had not yet returned. Later, at approximately 12:07 A.M. on May 28, Coast Guard Petty Officer Solomon made two unsuccessful attempts to contact the Kismet by radio using Channel 16, the international hailing frequency for marine traffic. However, at 12:10 A.M., Solomon monitored a Mayday call on Channel 16 that relayed information that the pleasure vessel Kismet had struck an underwater object and was sinking approximately two miles offshore in Lake Michigan near Cedar Creek. The Coast Guard responded to the call, and approximately one-half mile south of Manistee, a radar contact indicated something they assumed was the vessel requesting assistance located about 3½ miles south of Manistee. Approximately 1½ miles south of Manistee, the Coast Guard crew observed a strobe light in the water and, at 12:36 A.M., defendant, who identified himself as the owner and operator of the Kismet, was rescued from Lake Michigan.

On May 29, the Coast Guard and the Department of Natural Resources contacted the Manistee County Sheriff's Department and requested assis-

tance in locating the Kismet and in determining what had caused the boat to sink. With the aid of a Coast Guard helicopter, divers from the sheriff's department located the Kismet in approximately thirty-one feet of water at the bottom of Lake Michigan. Deputies Kowalkowski and Hilliard dove into the lake to inspect the boat.

On the port or left side of the vessel's bow, they observed a hole the size of a man's hand that was located a few inches below the water line. Kowalkowski also noted that, although the Kismet was a charter boat, none of the usual on-board equipment, such as a loran, graphs, fishing equipment, down riggers, fire extinguishers, and life jackets, was present on the vessel. Nothing was seen on the boat except one radio, which was sitting on the pilot's seat rather than being mounted on the dash or in some other fashion that would be normal for a boat of the Kismet's type. The radio microphone was mounted in the cradle. The engine-hatch covers were missing and the deputies were unable to locate them. Inside the boat, the deputies observed that the panel over the fuse box and wiring was open. Additionally, the anchor line was out of the bow and was set with the anchor buried in the sand at the bottom of the lake.

On the morning of June 1, apparently at the direction of defendant's insurer, the Kismet was raised from Lake Michigan by Abrahamson's Marine, a marine salvage company, towed to the Manistee harbor, and taken to the salvage company in Ludington. At this time, Deputy Kowalkowski again inspected the hole in the bow and photographed it from inside and outside the boat. At Kowalkowski's direction, the portion of the fiberglass containing the hole was cut from the hull of the Kismet. Kowalkowski seized this piece of fiberglass, as well as another, similar piece of

fiberglass that was found on the bottom of Lake Michigan when the Kismet was raised. Kowalkowski also inspected the interior of the boat and observed that there was only one fuse in the fuse box. Kowalkowski seized several wires that appeared to have been cut. Inside the cabin, he found the missing engine-hatch covers. The v-berth in the front of the cabin, which was in the area of the boat located over the hole in the hull, appeared to have been dismantled. The wires to the boat's auxiliary bilge pump were disconnected, the seacocks were open, and the hoses were disconnected from the water intake valves. All of the items seized were taken to the state police crime laboratory in Grayling for analysis.

Defendant moved to suppress all evidence seized from the Kismet, contending that there was no legal basis for the search of the boat without a warrant. The trial court disagreed and denied defendant's motion. On appeal, defendant contends that the trial court erred in denying the motion to suppress because it incorrectly determined that the Kismet was an abandoned vessel and that defendant had no reasonable expectation of privacy in his sunken boat. We disagree.

This Court will not reverse a trial court's denial of a motion to suppress unless that decision is clearly erroneous. *People v Burrell,* 417 Mich 439, 448; 339 NW2d 403 (1983). A decision is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *People v Armendarez,* 188 Mich App 61, 65-66; 468 NW2d 893 (1991). After review of the record in the present case, we are not so convinced.

The Fourth Amendment is not a guarantee against all searches and seizures, but only against those that are unreasonable. *People v Shabaz,* 424

Mich 42, 52; 378 NW2d 451 (1985). Therefore, the key inquiry in a Fourth Amendment analysis is always whether the government's invasion of the citizen's personal security was reasonable under all the circumstances. *Michigan v Long,* 463 US 1032, 1051; 103 S Ct 3469; 77 L Ed 2d 1201 (1983). The Michigan Constitution imposes no higher standard than that imposed by the United States Constitution. *People v Nash,* 418 Mich 196, 214-215; 341 NW2d 439 (1983).

Generally, a search conducted without a warrant is unreasonable unless both probable cause and some exception to the warrant requirement exist. *People v Jordan,* 187 Mich App 582, 586; 468 NW2d 294 (1991). However, an individual has no standing to challenge a search and seizure unless the person is present at the time of the search or asserts a possessory or proprietary interest in the property searched. *People v Romano,* 181 Mich App 204, 214; 448 NW2d 795 (1989). The search and seizure of abandoned property is presumptively reasonable because the owner no longer has an expectation of privacy in the property that he has abandoned. *Romano, supra.* Abandonment is an ultimate fact or conclusion that generally is based on a combination of act and intent. *Shabaz, supra,* 65-66. The proof supporting abandonment should reasonably lead to an exclusive inference of "throwing away." *Id.,* 66. Because there is no expectation of privacy in abandoned property, and because Fourth Amendment protections apply only when there is such an expectation of privacy, the defendant bears the burden of showing that the property searched was not abandoned. *Romano, supra,* 215.

In *United States v Edwards,* 644 F2d 1 (CA 5, 1981), the Fifth Circuit Court of Appeals considered a case involving an allegedly abandoned ship.

As in the present case, the Coast Guard received a distress call from a vessel identified as the Lady Barbara advising that the ship was aground on a reef off the coast of the Florida Keys and was taking on water and sinking. The Coast Guard searched for and eventually located the Lady Barbara at a point within the three-mile territorial limit of the United States. The defendant left the Lady Barbara and boarded a Coast Guard cutter, which transported him to the Coast Guard station. *Id.,* 1.

In the meantime, the Florida Marine Patrol also had received the distress call and had dispatched a vessel that was unable to reach the Lady Barbara because of rough seas. However, several hours later, a Marine Patrol vessel reached and boarded the Lady Barbara. The officers had received a tip from a citizen informant of unknown reliability that marijuana was on board the Lady Barbara. They boarded the ship with the dual purpose of determining whether anyone remained on board and ascertaining whether the ship contained contraband. The patrol officers discovered a large number of bales of marijuana on the Lady Barbara. *Id.,* 1-2. Later, after discovering that the Lady Barbara was on its list of suspect vessels, the Coast Guard also boarded the ship and confirmed the presence of approximately 30,000 pounds of marijuana in burlap bags stored in the hold of the Lady Barbara. *Id.,* 2. Because of rough weather, the seizure and removal of the marijuana from the ship took about three days to complete. The Coast Guard did not attempt to get a warrant to search the ship. *Id.*

The Court of Appeals ruled that the defendant had no standing to challenge the search of the Lady Barbara and the subsequent seizure of the marijuana. The Court stated that the test of

whether a defendant has abandoned property is whether he voluntarily discarded, left behind, or otherwise relinquished his interest in the property so that he could no longer retain a reasonable expectation of privacy in the property at the time of the search. The Court held that when the defendant called for help, accepted aid from the Coast Guard, and boarded the cutter, leaving his own vessel behind, he had voluntarily abandoned his ship and had relinquished his expectation of privacy in it. *Id.* See also *United States v Hunter,* 647 F2d 566 (CA 5, 1981) (a defendant had no reasonable expectation of privacy in a disabled airplane that he left unattended and unlocked near the runway and partially blocking the taxiway, instead of moving it to a safer place).

Similarly, in the present case, defendant sent out a distress call stating that his boat was sinking and requesting assistance, the Coast Guard responded, and defendant accepted their aid. We are not persuaded that the fact that defendant had already "abandoned ship" because his vessel sank before the Coast Guard vessel arrived renders his abandonment of the vessel any less voluntary than that which occurred in *Edwards.* There is no evidence that defendant made any effort to reestablish control over the Kismet. The vessel was raised by a salvage company, apparently at the direction of defendant's insurer in response to his claim of loss, and was stored at the salvage company's place of business, as opposed to at a place owned or controlled by defendant. Therefore, we conclude that, because defendant had abandoned the Kismet, law enforcement officials were free to examine the vessel and its contents, and the seizure of evidence as a result of that examination was proper. The trial court correctly denied defendant's motion to suppress.

Affirmed.