PEOPLE v TAYLOR

Docket No. 237223. Submitted June 5, 2002, at Detroit. Decided October 8, 2002, at 9:00 A.M. Leave to appeal sought.

Paul A. Taylor was charged in the Wayne Circuit Court with possession with intent to deliver less than fifty grams of cocaine and with possession of a firearm during the commission of a felony, after police officers responding to a narcotics complaint at a house that appeared to be abandoned found the defendant inside the house placing crack cocaine into small bags while near a gun. The defendant moved for the suppression of evidence of the cocaine, arguing that he had an expectation of privacy with respect to the house by virtue of a leasehold interest in the house and that the police officers' search and seizure without a warrant violated his rights under US Const, Am IV and Const 1963, art 1, § 11. The court, Vera Massey Jones, J., granted the motion and dismissed the charges. The prosecution appealed.

The Court of Appeals *held*:

An expectation of privacy that is protected by the Fourth Amendment does not arise with respect to abandoned property. Notwithstanding the defendant's claimed leasehold interest in the house involved in this case, factors indicating that the house was abandoned included boarded-up windows and doors, lack of water, gas, and legitimate electrical service, raw sewage in the basement, and a lack of appliances and furniture. The officers therefore did not tread on any interest protected by the Fourth Amendment when they entered the house without a warrant and observed the defendant in plain view bagging crack cocaine.

Reversed and remanded for further proceedings.

SEARCHES AND SEIZURES — ABANDONED PROPERTY.

A search of abandoned property and seizure of evidence found there is presumptively reasonable under the Fourth Amendment; an expectation of privacy does not arise with respect to abandoned property (US Const, Am IV; Const 1963, art 1, § 11).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Michael E. Duggan*, Pros-

ecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Janice M. Joyce Bartee,* for the people.

*Milton R. Henry* for the defendant.

Before: KELLY, P.J., and MURPHY and MURRAY, JJ.

KELLY, P.J. Defendant was charged with possession with intent to deliver less than fifty grams of cocaine, MCL 333.7401(2)(a)(iv), and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court granted defendant's motion to suppress the evidence and dismissed the case against defendant. We reverse and remand.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On February 7, 2001, Detroit Police Officer William Ashford was assigned to a plain clothes unit that investigated narcotics complaints. During his six years of employment with the precinct, he was dispatched to 17387 Ferguson in the city of Detroit approximately fifteen times to investigate such complaints. Ashford believed that drugs were being sold at the location, and he had recovered drugs from the house during the previous year. However, he never observed defendant at or in the house on any of these fifteen prior occasions.

Approximately two weeks before the incident resulting in defendant's prosecution, Ashford was again called to the Ferguson house to follow up on a narcotics complaint. At that time, Ashford believed, on the basis of the condition of the premises, that the house was unoccupied and vacant. There were no doors whatsoever on the house and only the windows

on the north side of the house were boarded up. There was no running water or working gas in the house. Because the electrical meter box was disconnected and there was an orange 110-volt extension cord running to the house from a neighboring property, Ashford believed that the electricity servicing the house was illegally procured. There was raw sewage in the basement and a card table was the only furniture found in the house.

On February 7, 2001, Officer Ashford and his partner Charles Oates were dispatched to 17387 Ferguson to investigate still another narcotics complaint. Ashford testified that when he arrived at the home, he noticed that more windows were boarded up but no doors hung in the doorways. The officers got out of their vehicle and approached the south side of the house. While the officers traveled down the south side, they heard a cell phone ringing and proceeded to the rear entrance. Officer Ashford testified that there was no door at the rear entrance to the house, but at one time it had been boarded up. On this particular instance, Ashford testified that the board was moved away from the doorway, allowing the officers an unobstructed view into the basement.

The officers did not have a search warrant. Nevertheless, they proceeded through the rear entrance and up the stairs into the kitchen, where they observed defendant seated at a card table with packaging bags that Officer Ashford believed contained crack cocaine. A cell phone and a firearm were also on the card table along with the suspected crack cocaine. The officers placed defendant under arrest and seized the contraband. At the time of his arrest, defendant

stated that he resided at 15893 Muirland. Later, at the precinct, he reaffirmed the address as his residence.

Defendant moved to have evidence of the narcotics suppressed on the ground that the search and seizure without a warrant violated both the United States Constitution and the Michigan Constitution, US Const, Am IV; Const 1963, art 1, § 11, as an unreasonable search and seizure. In support of his position, defendant produced a lease for the premises at 17387 Ferguson. Defendant argued that because he had a leasehold interest in the house, he had an expectation of privacy that required a search warrant to invade. The prosecutor argued that defendant did not have a legitimate expectation of privacy in the property despite the lease because the property was obviously abandoned and, furthermore, defendant was not actually living at the house.

After hearing the evidence presented, the trial court suppressed the evidence seized, ruling:

> [T]he officers believed in good faith that the place was vacant. It looks vacant. There are no doors, the windows are boarded up, and they have been getting complaint after complaint, which is what they get all of the time on these kinds of houses.
>
> And the person who is just in there occupying it without a real legal right to be there has not [sic] expectation of privacy. And therefore, as long as it was actually vacant, the officers had every right to just walk right in there and look.
>
> Now, in this instance, the defendant has presented a lease. He has an expectation of privacy, which would require that they get a search warrant. [T]here are a lot of things that people lease or own that they expect to have privacy in. They're not always houses. They are all kinds of things. But once they lease them, they have an expectation of privacy, and it requires a search warrant to go in and violate that interest.

So I am going to have to suppress the evidence . . . .

The prosecution appeals as of right.

## II. STANDARD OF REVIEW

In a suppression hearing, this Court reviews a trial court's factual findings for clear error and will affirm unless left with a definite and firm conviction that a mistake was made. *People v Davis*, 250 Mich App 357, 362; 649 NW2d 94 (2002). However, we consider de novo the trial court's ultimate ruling on defendant's motion to suppress. *Id.*

## III. FOURTH AMENDMENT JURISPRUDENCE

The right against unreasonable searches and seizures is guaranteed by both the United States Constitution and the Michigan Constitution. US Const, Am IV; Const 1963, art 1, § 11; *Illinois v McArthur*, 531 US 326, 330; 121 S Ct 946; 148 L Ed 2d 838 (2001); *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). The Fourth Amendment "was a reaction to the evils of the use of the general warrant in England and the writs of assistance in the Colonies, and was intended to protect against invasions of 'the sanctity of a man's home and the privacies of life,' [citation omitted], from searches under indiscriminate, general authority." *Warden, Md Penitentiary v Hayden*, 387 US 294, 301; 87 S Ct 1642; 18 L Ed 2d 782 (1967). To jealously guard and protect these private interests from arbitrary governmental intrusions, the Fourth Amendment prohibited unreasonable searches and seizures and further required the use of a warrant that particularly describes "the place to be

searched, and the persons or things to be seized," thus "interposing 'a magistrate between the citizen and the police.' " *Id.* (citation omitted).

Not all searches, however, implicate the Fourth Amendment. To be sure, those seeking asylum in the Fourth Amendment must demonstrate its applicability. *Rawlings v Kentucky*, 448 US 98; 100 S Ct 2556; 65 L Ed 2d 633 (1980); *People v Nash*, 418 Mich 196, 204; 341 NW2d 439 (1983). Because the Fourth Amendment protects people, as opposed to places or areas, the United States Supreme Court emphasized that a search for purposes of the Fourth Amendment occurs when the government intrudes on an individual's reasonable, or justifiable, expectation of privacy. See *Katz v United States*, 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967); *Nash, supra* at 205. Indeed, what an individual " 'seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.' " *People v Clark*, 133 Mich App 619, 625; 350 NW2d 754 (1983), quoting *Katz, supra* at 351-352.

### IV. REASONABLE EXPECTATION OF PRIVACY

The prosecution argues that the trial court's decision suppressing the evidence solely on the basis of defendant's leasehold interest in the property constituted error. We agree and find that a leasehold interest alone does not establish a legitimate expectation of privacy entitled to Fourth Amendment protection.

An expectation of privacy is legitimate only if the individual exhibited an actual, subjective expectation of privacy and that actual expectation is one that society recognizes as reasonable. *Bond v United*

*States*, 529 US 334, 338; 120 S Ct 1462; 146 L Ed 2d 365 (2000), on remand 213 F3d 840 (CA 5, 2000); *People v Perlos*, 436 Mich 305, 317; 462 NW2d 310 (1990). Whether the expectation exists, both subjectively and objectively, depends on the totality of the circumstances surrounding the intrusion. *Id.* at 317-318; *People v Smith*, 420 Mich 1, 27-28; 360 NW2d 841 (1984).

To determine whether defendant had a reasonable expectation of privacy in the Ferguson house sufficient to challenge the search under the Fourth Amendment, we must inquire whether defendant "took normal precautions to maintain his privacy—that is, precautions normally taken by those seeking privacy." *Id.* at 26, quoting with approval *Rakas v Illinois*, 439 US 128, 152-155; 99 S Ct 421; 58 L Ed 2d 387 (1978) (Powell, J. concurring). At best, the record reveals that defendant nailed up additional boards on the windows, but otherwise neglected to erect doors in the doorways for purposes of excluding the general public. Indeed, a "normal precaution" to maintain privacy, at a bare minimum, certainly includes installing functional doors on the outside of the premises, replacing shattered windows, and erecting signs against trespass to discourage would-be intruders from entering. When the officers went to the vacant house to investigate the complaint, they did not observe any signs posted against trespass or any other measure taken to exclude members of the public in general. See *People v Taormina*, 130 Mich App 73, 79; 343 NW2d 236 (1983), quoting *People v Dinsmore*, 103 Mich App 660, 669; 303 NW2d 857 (1981) (listing some factors that demonstrate an individual's reasonable expectation of privacy).

Though defendant contends that he displayed a subjective expectation of privacy by nailing up a board or two, that alone was insufficient to "maintain his privacy" and is not, as a matter of law, an expectation that society is prepared to accept as reasonable. *Smith, supra* at 26; see also *People v Custer (On Remand)*, 248 Mich App 552, 560; 640 NW2d 576 (2001); *California v Greenwood*, 486 US 35, 39; 108 S Ct 1625; 100 L Ed 2d 30 (1988). Although the Fourth Amendment viciously protects one's privacy interest in the home against warrantless governmental intrusions, that expectation is considerably reduced while in a structure that by all objective indications appears abandoned.

### A. ABANDONMENT

A person can abandon property and thus entirely deprive himself of the ability to contest a search and seizure of that property. See *People v Zahn*, 234 Mich App 438, 448; 594 NW2d 120 (1999); see also *People v Rasmussen*, 191 Mich App 721; 478 NW2d 752 (1991). The search and seizure of property that has been abandoned is "presumptively reasonable," because the owner no longer has an expectation of privacy in the abandoned property. *Rasmussen, supra* at 725, citing *People v Romano*, 181 Mich App 204, 214; 448 NW2d 795 (1989). "Because there is no expectation of privacy in abandoned property, and because Fourth Amendment protections apply only when there is such an expectation of privacy, the defendant bears the burden of showing that the property searched was not abandoned." *Rasmussen, supra* at 725. The proof required to substantiate abandonment "should reasonably lead to an exclusive inference of 'throwing

away.' " *Id.*, citing *People v Shabaz*, 424 Mich 42, 65-66; 378 NW2d 451 (1985). Whether an owner "abandoned" his property is an ultimate fact that turns on a combination of act and intent. *Id.*; *Rasmussen, supra* at 725.

With respect to abandoned or vacant structures, objective factors pertinent to the totality of the circumstances inquiry must be evaluated. Case by case, these factors will become relevant to determine whether police officers must secure a warrant before entering: (1) the outward appearance, (2) the overall condition, (3) the state of the vegetation on the premises, (4) barriers erected and securely fastened in all openings, (5) indications that the home is not being independently serviced with gas or electricity, (6) the lack of appliances, furniture, or other furnishings typically found in a dwelling house, (7) the length of time that it takes for temporary barriers to be replaced with functional doors and windows, (8) the history surrounding the premises and prior use, and (9) complaints of illicit activity occurring in the structure. Although the listed factors are not exhaustive or otherwise dispositive, a trial court must necessarily place them into the totality of the circumstances equation where a vacant structure is at issue.

### B. THE FERGUSON HOUSE

Applying these objective factors to the case at bar leads to the reasonable inference that the Ferguson house was indeed abandoned. From its exterior, it appeared to be vacant, i.e., unoccupied, abandoned. Either boards hung in place of windows and doors or the openings remained entirely exposed. In fact, police could see directly into the interior of the house

through the vacant rear doorway. In its interior, the house had no running water, no apparent legitimate source of electricity, and no gas, and in the basement stood raw sewage. Additionally, not even the most basic of appliances were found in the house and the only furniture was a card table and a few boxes on which to sit, providing further, objective indicia that the house was abandoned.

In addition, Ashford's testimony established that, over the past six years, he had been at 17387 Ferguson approximately fifteen times for the purpose of responding to various narcotics complaints and had recovered drugs from the house during the previous year. Two weeks before the date at issue, Ashford answered a narcotics complaint at 17387 Ferguson. At that time, there were no doors hanging in the doorways. In other words, all doorways were completely open. Additionally, the windows on the north side of the house were all boarded up and there was no running water or working gas servicing the house. When Ashford returned on February 7, 2001, the condition of the house remained largely unchanged except, in addition to the boarded up windows on the north side of the house, additional boards appeared on the front window and in the front doorway. Also, a board that appeared to have, at one time, covered the rear doorway, was removed, allowing Ashford to have an unobstructed view into the house.

Importantly, the history surrounding the house lends further credence to the belief that it was abandoned. For years police received numerous complaints that the house was used for drug trafficking. Most telling is defendant's own conduct. Indeed, on two occasions, defendant gave a different address to

identify his residence and did not produce a lease for the Ferguson premises until the evidentiary hearing.

A review of the objective, verifiable facts and the circumstances in their totality indicates the external appearance and internal condition of the house gave rise to a reasonable inference that the house was utterly abandoned. Even presuming the validity of the lease presented by defendant, defendant's own actions clearly establish that he had no reasonable expectation of privacy in the Ferguson house that would entitle him to Fourth Amendment protection. *Zahn, supra* at 448.

### V. CONCLUSION

We hold that the entry into and contemporaneous search of an abandoned structure is presumptively reasonable because "the owner no longer has an expectation of privacy in the property that he has abandoned." *Rasmussen, supra* at 725. Police officers do not need a warrant before entering structures that, by all objective manifestations, appear abandoned. Consequently, the officers did not tread on any interest protected by the Fourth Amendment when they entered the Ferguson house without a warrant and observed defendant in plain view placing crack cocaine into individual baggies. See *Clark, supra* at 629. Accordingly, we find that the trial court clearly erred in finding a reasonable expectation of privacy by virtue of defendant's leasehold interest alone.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.