PEOPLE v LABELLE

Docket No. 261749. Submitted October 5, 2006, at Lansing. Decided
    December 12, 2006, at 9:10 a.m.
        Michelle E. LaBelle was charged in the 52nd District Court with one
        count of possession with intent to deliver marijuana, MCL
        333.7401(2)(d)(iii), after a police officer stopped a vehicle in which
        the defendant was a passenger for a suspected traffic violation and,
        with the driver's consent, searched the vehicle and its contents,
        including the defendant's backpack in which the marijuana was
        found. The district court, Brian MacKenzie, J., dismissed the
        charge after concluding that the search of the defendant's back-
        pack was illegal, and the Livingston Circuit Court, Daniel A.
        Burress, J., affirmed the dismissal on appeal. The Court of Appeals
        denied the prosecutor's delayed application for leave to appeal, and
        the Supreme Court, in lieu of granting leave, remanded the matter
        to the Court of Appeals for consideration as on leave granted, and
        directed the parties to submit briefs addressing whether the
        defendant has standing to object to the traffic stop or the subse-
        quent search of the vehicle. 472 Mich 881 (2005).

        The Court of Appeals held:

        1. It is unnecessary to decide whether the defendant has
    standing to challenge the validity of the traffic stop, because the
    search of the defendant's backpack was invalid regardless of the
    standing issue.

        2. The exception to the warrant requirement for searches
    incident to arrest does not apply to this case, because that
    exception does not apply to a traffic stop that does not result in an
    arrest, even if the officer would have been justified in making an
    arrest. The exception was intended to allow officers to disarm a
    suspect when taking him or her into custody and to preserve
    evidence for later use at a trial, and neither purpose is served in
    the case of a traffic stop that does not result in a full custodial
    arrest.

        3. There is no indication that the defendant granted consent
    for a search of the backpack, nor do any facts indicate that the
    officer had reason to believe that the driver had common authority
    over the backpack. The location of the backpack at the feet of the

defendant, who was a passenger, indicates that it was much more likely to belong to her than to the driver.

Affirmed.

1. SEARCHES AND SEIZURES — TRAFFIC STOPS — EXCEPTIONS TO WARRANT REQUIREMENT — SEARCHES INCIDENT TO ARREST.

The exception to the warrant requirement for searches incident to arrest does not apply to a traffic stop that does not result in arrest, even if the officer would have been justified in making an arrest.

2. SEARCHES AND SEIZURES — TRAFFIC STOPS — EXCEPTIONS TO WARRANT REQUIREMENT — CONSENT.

A police officer searching a vehicle pursuant to the driver's consent during a traffic stop may not search a closed container located at the passenger's feet without other evidence that the driver owns the container or has common authority over it.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Joyce F. Todd*, Appellate Division Chief, and *John S. Pallas*, Assistant Prosecuting Attorney, for the people.

*Neal D. Nielsen* for the defendant.

Before: SAWYER, P.J., and WILDER and SERVITTO, JJ.

SAWYER, P.J. Defendant was charged with one count of possession with intent to deliver marijuana.[1] The district court dismissed the charge after concluding that the marijuana was found during an illegal search of defendant's backpack. The circuit court affirmed the dismissal on appeal. This Court denied the prosecutor's delayed application for leave to appeal. But the Supreme Court, in lieu of granting leave, remanded the matter to this Court for consideration as on leave granted, directing the parties to address the issue

---

[1] MCL 333.7401(2)(d)(iii).

whether defendant has standing to object to the traffic stop or the subsequent search of the vehicle.[2]

Defendant was a passenger in an automobile that was stopped by Livingston County Sheriff's Deputy Pete Hairston. Hairston stopped the vehicle, thinking that its driver failed to heed a stop sign. During the course of the stop, Deputy Hairston asked the occupants of the vehicle to get out of the car. Thereafter, the deputy obtained the driver's consent to search the vehicle. During the search of the vehicle, Deputy Hairston found a backpack on the floor of the front passenger side of the car, where defendant was sitting. Hairston opened the backpack and found two bags of marijuana inside. When he inquired whose backpack it was, defendant admitted that it was hers and that it contained additional marijuana. In fact, the deputy found an additional ten bags of marijuana, along with a pipe and two hand scales.

Hairston testified that he never secured defendant's permission to search the backpack. Furthermore, the driver had not, in fact, disregarded a stop sign as there was no stop sign present. Hairston admitted that he was mistaken regarding the presence of the stop sign, stating that there previously had been a stop sign at the intersection. Hairston further maintained that a violation had occurred because the road from which the vehicle had turned was a private road and that the driver was obligated to stop before turning onto a public road. The deputy, however, admitted that he had no independent knowledge that the road was, in fact, a private road.

Although the Supreme Court directed the parties to brief the issue whether defendant has standing to

---

[2] *People v Labelle*, 472 Mich 881; 693 NW2d 823 (2005).

challenge the validity of the traffic stop, we decline to address that issue. Assuming that either defendant lacks the standing to challenge the validity of the traffic stop or that the traffic stop was in any event valid, we believe that the search of defendant's backpack was invalid because neither reason offered to justify a search without a warrant is applicable to the facts of this case.

The prosecutor argues that the search of defendant's backpack can be justified under both the consent to search doctrine and the search incident to arrest doctrine. The consent is based on the consent given by the driver, and the second argument is based on the prosecutor's argument that the driver could have been (but was not) arrested for failure to have an operator's license. While we review a lower court's factual findings on a suppression motion for clear error, we review de novo the ultimate ruling on the suppression motion.[3] In our de novo review, we agree with the lower court that the deputy lacked the authority to search defendant's backpack.

Turning to the second argument first, we are not persuaded that the search incident to arrest doctrine is applicable to this case. Michigan courts have held that the search incident to arrest exception to the warrant requirement "applies whenever there is probable cause to arrest, even if an arrest is not made at the time the search is actually conducted."[4] But none of these cases involved traffic stops, and the United States Supreme Court has made it clear that the search incident to

---

[3] *People v Davis*, 250 Mich App 357, 362; 649 NW2d 94 (2002).

[4] *People v Solomon (Amended Opinion)*, 220 Mich App 527, 530; 560 NW2d 651 (1996). See also *People v Arterberry*, 431 Mich 381, 384-385; 429 NW2d 574 (1988), and *People v Champion*, 452 Mich 92, 116; 549 NW2d 849 (1996).

arrest doctrine does not apply to a traffic stop that does not result in arrest, even if the officer would have been justified in making an arrest.[5]

In *Knowles*, an officer stopped the defendant for speeding. Although Iowa law authorized the officer to arrest the defendant, the officer issued a citation instead.[6] The officer then conducted a full search of the vehicle, discovering a bag of marijuana and a "pot pipe" under the driver's seat, resulting in the defendant's arrest.[7] The defendant challenged the search, with the prosecution relying on the search incident to arrest doctrine. The Iowa Supreme Court ruled in favor of the prosecution, concluding that a "full-blown search" is authorized where probable cause to make a custodial arrest existed, even though no such arrest was made.[8]

In rejecting the argument that a search incident to arrest is justifiable in such circumstances, the Court noted that neither of the two rationales for such searches applies in the case of a traffic stop that does not result in a full custodial arrest. The first rationale is the need to disarm a suspect when taking him or her into custody.[9] The Court noted that the concern for officer safety is significantly less in the traffic citation situation given that the encounter is likely to be briefer (because the suspect is not being transported to jail) and a person receiving a citation might be less hostile to the police than one who is formally arrested.[10] The

---

[5] *Knowles v Iowa*, 525 US 113, 116; 119 S Ct 484; 142 L Ed 2d 492 (1998); see also *Illinois v Caballes*, 543 US 405, 414; 125 S Ct 834; 160 L Ed 2d 842 (2005).

[6] *Knowles, supra* at 114.

[7] *Id.*

[8] *Id.* at 115-116.

[9] *Id.* at 116.

[10] *Id.* at 117.

Court was satisfied that the actions that the police may take for their safety during a traffic stop, such as ordering the occupants out of the vehicle, are adequate without a full-blown search of the vehicle.[11]

The second rationale behind the search incident to arrest doctrine is the need to preserve evidence for later use at trial.[12] The Court found no basis under this rationale because a search of the vehicle would not yield any additional evidence of the offense for which the citation was issued, namely speeding. The Court further rejected the argument that the search could be justified because it might yield evidence of an "as yet undetected crime."[13]

We need not determine whether the holdings in *Arterberry*, *Champion*, and *Solomon* survived the subsequent United States Supreme Court decision in *Knowles*. The Court in *Rawlings v Kentucky*[14] did uphold a search incident to an arrest where "the formal arrest followed quickly on the heels of the challenged search," indicating that it was not "particularly important that the search preceded the arrest rather than vice versa." And the Court did not discuss *Rawlings* in *Knowles*, much less overrule it. Therefore, it may well be that it remains a correct statement of the law that, outside the context of a traffic stop, where there is probable cause to arrest a suspect on a nontraffic offense, the search incident to arrest may occur after probable cause to arrest exists but before the formal arrest takes place as long as the arrest quickly follows the search.

But at a minimum, in light of *Knowles*, we must

---

[11] *Id.* at 117-118.

[12] *Id.* at 116.

[13] *Id.* at 118.

[14] 448 US 98, 111; 100 S Ct 2556; 65 L Ed 2d 633 (1980).

conclude that the search incident to arrest doctrine does not apply to justify the search of a motor vehicle during a traffic stop where there is probable cause to believe that the driver has committed an offense for which the officer would be justified in making a full custodial arrest but instead issues a citation (or takes no enforcement action at all). And that is the situation in the case at bar. In any event, the offense that the prosecutor offers as the one for which the driver could have been arrested was failure to present an operator's license upon demand by the officer.[15] As in *Knowles*, while the officer could have arrested for this offense, he did not. And also like *Knowles*, a search of the vehicle would not have yielded any evidence of that crime, because the crime was complete when the driver failed to present the operator's license to Deputy Hairston. Therefore, under *Knowles*, the subsequent search of the vehicle cannot be justified by the fact that Deputy Hairston could have, but did not, arrest the driver for the violation.

The prosecutor also justifies the search under the consent to search doctrine, the consent having been given by the driver. While the driver could grant consent to search the vehicle, we are not persuaded that, under the facts of this case, Deputy Hairston could rely on that consent to justify the search of the backpack. A search is reasonable under the Fourth Amendment if voluntary consent has been given.[16] Generally, that consent must come from the person whose property is being searched or from a third party who possesses common authority over the property.[17] The burden of

[15] MCL 257.311.

[16] *Illinois v Rodriguez*, 497 US 177, 181; 110 S Ct 2793; 111 L Ed 2d 148 (1990).

[17] *Id.*

establishing that common authority rests on the government.[18] "Common authority" is based "on mutual use of the property by persons generally having joint access or control for most purposes . . . ."[19]

In the case at bar, there is no indication that defendant consented to a search of the backpack. Nor is there any indication that the driver had common authority over the backpack. Therefore, a consent search cannot be upheld on the basis that consent was obtained from someone who had actual authority to grant consent to search the backpack. But, as discussed at length in *Rodriguez*,[20] a search justified by consent is valid even if the person giving consent lacks the authority to do so provided that it was reasonable for the police to believe that the person possessed the authority to consent. But the Court cautioned that the police cannot blindly rely on consent given by any third party, and a search based on such consent will be invalid if the reliance was unreasonable.[21]

*Rodriguez* dealt with the search of an apartment based on consent given by a third party who had a key and referred to the apartment as "ours." The police's knowledge of the person's status as a former, versus current, roommate was unclear.[22] The Court concluded that the search would be valid if the police reasonably believed that they had obtained consent from a person who had common authority over the premises, even if the person in fact did not. But *Rodriguez* cautions that

[18] *Id.*

[19] *United States v Matlock*, 415 US 164, 171 n 7; 94 S Ct 988; 39 L Ed 2d 242 (1974).

[20] *Rodriguez, supra* at 183-189.

[21] *Id.* at 188-189.

[22] *Id.* at 179.

even an explicit assertion of having that common authority is not necessarily adequate:

> Even when the invitation [to enter the premises] is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry. As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief'" that the consenting party had authority over the premises? *Terry v Ohio*, 392 U.S. 1, 21-22 [; 88 S Ct 1868; 20 L Ed 2d 889] (1968). If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.[23]

Thus the question in the case at bar becomes whether it was reasonable for Deputy Hairston, on the basis of the facts known to him at the time, to believe that the driver possessed common authority over the backpack and, therefore, could consent to its search. We do not believe that the facts support such a conclusion. The vehicle, a coupe, had three occupants. Defendant was a passenger in a front bucket seat. The third occupant was in the rear seat. The backpack was on the floorboard at defendant's feet on the front passenger side of the vehicle. The placement of the backpack suggests that it was the property of the passenger, not the driver, and we are offered no facts to suggest that there was any particular reason to believe that the backpack belonged to the driver.[24] A small sack or other

---

[23] *Id.* at 188-189.

[24] In her brief, defendant argues that the backpack was "a girls' backpack" and that it had defendant's identification on it. Deputy Hairston described the backpack as being white with a picture of

minor detritus belonging to a driver might accumulate on the passenger side floor of the vehicle, and a person riding in the passenger seat may not find it inconvenient to let it remain at his or her feet. But an object as large as a backpack is hardly convenient to have at one's feet. It would seem much more likely that if a driver did have his backpack on the passenger-side floor, the backpack would be moved to a more convenient location when the seat was occupied by a passenger. That is, if the backpack belonged to the driver, it would seem more likely that it would be found in the back seat (which had only one passenger) or in the trunk. On the other hand, it would not be as unlikely that a passenger who got into the car with her backpack might place the backpack at her own feet.

In short, we believe that a backpack found at a passenger's feet is much more likely to belong to the passenger than to the driver. Therefore, absent some particularized reason to believe that such a backpack belongs to the driver, or at least that the driver had common authority over the backpack, we do not believe

SpongeBob SquarePants on it. Unlike defendant, we are not prepared to conclude that such a backpack must obviously belong to a female. Further, if the backpack did have defendant's identification on it, defendant does not cite such a fact in the record, nor were we able to find support for such a claim. Obviously, if the backpack did have defendant's name written on the exterior or otherwise have her identification on the exterior, that would only support the proposition that it was unreasonable for Deputy Hairston to believe that the driver possessed authority over the backpack. But the important point in this regard is that there was nothing about the backpack itself that would suggest that it more obviously belonged to the driver than to defendant. Just as it cannot be conclusively stated that it was "a girls' backpack," it also cannot be stated that it was obviously "a boys' backpack." And while defendant's claim that her identification was on it is not substantiated by the record, there is also no indication from the record that the driver's identification was on the exterior of the backpack.

it reasonable to conclude that the driver did have authority over the backpack and therefore could consent to its search.

In this respect, the California case relied on by the prosecutor, *People v Clark*,[25] is distinguishable. In *Clark*, the police obtained consent to search an unoccupied vehicle from its owner, and they found the defendant's bloodstained clothes lying on the back seat. *Clark* specifically relied on the fact that the defendant had left his clothing "readily displayed" in a common area of the vehicle.[26] There is, in our view, a fundamental difference in the expectation of privacy between the contents of a closed backpack kept at one's feet and clothing left strewn on the backseat of an unoccupied motor vehicle. We also find it significantly more reasonable for a police officer to believe that the vehicle's owner has joint access or control over clothing strewn about the back seat of an unoccupied vehicle than he does over a backpack found at the passenger's feet.

Likewise, the other California case on which the prosecutor relies, *People v Stage*,[27] fails to support the people's position. In *Stage*, the officer received the owner's consent to search the vehicle and, in the course of that search, searched a passenger's jacket, which was lying on a seat (but which the officer had seen the passenger wearing before the search began). The Court held that the owner's consent to search the vehicle did not extend to authorize a search of the jacket.[28] The prosecutor cites *Stage* for the proposition that it is only when the officer knows before the search that the property does not belong to the person giving consent

---

[25] 5 Cal 4th 950; 22 Cal Rptr 2d 689; 857 P2d 1099 (1993).

[26] *Clark, supra* at 979.

[27] 7 Cal App 3d 681; 86 Cal Rptr 701 (1970).

[28] *Stage, supra* at 683-684.

that the consent renders the search of that property invalid. *Stage* contains no such holding. Rather, *Stage* merely noted that it was "particularly so" that the search was invalid where the officer did know that the property belonged to someone else.[29] Ultimately, the conclusion in *Stage* was that the search was unlawful because there was no reasonable basis for the officer to conclude that the person giving consent to search had control over the jacket and therefore could give consent to search.[30] That conclusion is consistent with our holding in this case.

It is important to remember that consent to search a vehicle is not blanket authority to search all contents of the vehicle. In *Florida v Jimeno*,[31] for example, the Court concluded that consent by the driver to search a car for drugs included permission to open a paper bag found on the floor of the car. But, the Court cautioned, such a general consent to search, while sufficient to justify opening a closed container, would very likely be insufficient to justify breaking open a locked briefcase in the trunk.[32] We do not believe it necessary to determine whether a backpack is more like a paper bag or a locked briefcase and then apply *Jimeno* accordingly.[33] Rather, we rely on *Jimeno* merely to point out that even a general consent to search a vehicle does not necessarily grant carte blanche to the police to search every container within the vehicle. And if such general consent by the driver does not necessarily cover all contain-

[29] *Id.* at 683.

[30] *Id.* at 683-684.

[31] 500 US 248; 111 S Ct 1801; 114 L Ed 2d 297 (1991).

[32] *Jimeno, supra* at 251-252.

[33] Though, as discussed above, we do think that, in general terms, it is perhaps more reasonable for an officer to conclude that a small, random paper bag on the floor of the car is likely to be associated with the driver rather than with the passenger near it.

ers within the car that belong to the driver, then it cannot be reasonable for a police officer to believe that such consent justifies opening every container, especially one that objectively appears to belong to a passenger. So while *Jimeno* might have justified the search of the backpack if had belonged to the driver, it does not justify a search of the backpack that apparently belonged to a passenger.

In sum, under the facts of this case, we do not find it to be objectively reasonable for the deputy to have automatically assumed, without further facts or inquiry, that the backpack at defendant's feet belonged to the driver and, therefore, that the driver had the authority to grant consent to search it. Upon encountering the backpack in that location, and without there being any particularized reason to believe that it belonged to the driver rather than the passenger at whose feet it was located, Deputy Hairston should not have proceeded to search it based on the authority granted under the driver's general consent to search the vehicle without first ascertaining that the driver either owned the backpack or at least had common authority over it.

For the above reasons, we conclude that the search without a warrant of the backpack cannot be justified under either the consent to search doctrine or the search incident to arrest doctrine. Therefore, regardless of whether the traffic stop was valid and whether defendant has the standing to challenge the validity of the traffic stop, the search of the backpack was invalid. Accordingly, the district court properly suppressed evidence of the contents of the backpack and dismissed the charges against defendant.

Affirmed.