# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LARRY GERALD MEAD,

        Defendant-Appellant.

FOR PUBLICATION
August 8, 2017
9:00 a.m.

No. 327881
Jackson Circuit Court
LC No. 14-004482-FH

## ON REMAND

Before: TALBOT, C.J., and O'CONNELL and K. F. KELLY, JJ.

O'CONNELL, J.

This case addressing defendant Larry Gerald Mead's Fourth Amendment right against unreasonable searches returns to us on remand from the Michigan Supreme Court. Mead appeals as of right his conviction, following a jury trial, of possessing methamphetamine, MCL 333.7403(2)(b)(*i*), as a fourth-offense habitual offender, MCL 769.12. The trial court sentenced him to serve 2 to 10 years' imprisonment. In our prior opinion, we concluded that Mead, a passenger in a vehicle, lacked standing to challenge the search of a container in the vehicle under *People v LaBelle*, 478 Mich 891; 732 NW2d 114 (2007), and affirmed Mead's conviction.[1] However, the Michigan Supreme Court vacated our judgment and remanded for us to consider:

> (1) whether [the Michigan Supreme Court's] peremptory order in *People v LaBelle*, 478 Mich 891 (2007), is distinguishable; (2) whether the record demonstrates that the police officer reasonably believed that the driver had common authority over the backpack in order for the driver's consent to justify the search, see *Illinois v Rodriguez*, 497 US 177, 181, 183-189; 110 S Ct 2793; 111 L Ed 2d 148 (1990); and (3) whether there are any other grounds upon which the search may be justified.[2]

---

[1] *People v Mead*, unpublished opinion per curiam of the Court of Appeals, issued September 13, 2016 (Docket No. 327881).

[2] *People v Mead*, 500 Mich 967; 892 NW2d 379 (2017).

On remand, we address all three issues, conclude that issue one controls, and affirm.

## I. FACTUAL BACKGROUND

On the night of May 29, 2014, Rachel Taylor was driving a vehicle, and Mead rode in the front passenger seat. Officer Richard Burkart testified that he stopped the vehicle for an expired license plate. Officer Burkart stated that Mead had a backpack on his lap. According to Officer Burkart, Taylor consented to a search of the vehicle, Officer Burkart asked Taylor and Mead to exit the vehicle, and Mead left the backpack "on the front passenger floorboard." When Officer Burkart searched the vehicle, he opened the backpack and found methamphetamine. Mead admitted that the backpack belonged to him, but moved to suppress the evidence found in the backpack. The trial court denied his motion.

## II. *PEOPLE V LABELLE*

We conclude the Michigan Supreme Court's order in *LaBelle*, 478 Mich at 891-892, is not distinguishable from the present case, and therefore, we are required to affirm both defendant's conviction and sentence.

The defendant in *LaBelle* was a passenger in a motor vehicle. *Id*. The vehicle's driver violated MCL 257.652(1), and the police stopped the vehicle. *Id*. The Michigan Supreme Court concluded that the stop was objectively lawful. *Id*. After the stop, the driver consented to a search of the vehicle. See *id*. Police then searched an unlocked backpack that the defendant left in the "passenger compartment of the vehicle." See *id*. The defendant moved to suppress evidence of the contents of the backpack. See *id*. However, the Supreme Court concluded that "[t]he search of the backpack was valid," explaining that "[b]ecause the stop of the vehicle was legal, the defendant, a passenger, lacked standing to challenge the subsequent search of the vehicle." *Id*. Further, "[a]uthority to search the entire passenger compartment of the vehicle includes any unlocked containers located therein, including the backpack in this case." *Id*.

We cannot distinguish Mead's case from the Supreme Court's order in *LaBelle*. Mead was a passenger in a motor vehicle driven by Taylor. Officer Burkart stopped the vehicle. Mead has not challenged the validity of the stop. After the stop, Taylor consented to a search of the vehicle. Officer Burkart then searched an unlocked backpack in the vehicle's passenger compartment. Therefore, under *LaBelle*, Mead lacked standing to challenge the search, and Officer Burkart had authority to search the backpack. *LaBelle* is binding on this Court. *People v Giovannini*, 271 Mich App 409, 414; 722 NW2d 237 (2006). Because Mead lacks standing to challenge the search, any challenge to the search must fail. See *People v Earl*, 297 Mich App 104, 107; 822 NW2d 271 (2012), aff'd 495 Mich 33 (2014).

## III. REASONABLE BELIEF OF COMMON AUTHORITY

Notwithstanding the fact that existing Michigan law provides that a passenger in a motor vehicle does not have standing to contest the search of a third party's vehicle, the Supreme Court has directed us to address whether the record in the present case demonstrates that Officer Burkart reasonably believed that Taylor had common authority over the backpack in order for her consent to justify the search and directed our attention to *Rodriguez*, 497 US at 181, 183-189.

The *Rodriguez* Court did not address warrantless searches, pursuant to consent, of containers in automobiles. Rather, it addressed "[w]hether a warrantless entry [to an apartment] is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not" possess common authority. *Id*. at 179. In doing so, the Court ruled that the Fourth Amendment prohibition against warrantless entry to another's home does not apply when the police obtained "voluntary consent" from either "the individual whose property is searched," "a third party who possesses common authority over the premises," or a third party who an officer reasonably believes possesses common authority over the premises. *Id*. at 181-189. Common authority exists amongst persons with " 'mutual use of the property by persons generally having joint access or control for most purposes.' " *Id*. at 181, quoting *United States v Matlock*, 415 US 164, 171 n 7; 94 S Ct 988; 39 L Ed 242 (1974). An officer reasonably believes that a third party possesses common authority over a premises if "the facts available to the officer at the moment" would "warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *Id*. at 188 (quotations and citations omitted).

Multiple federal circuit courts and other state courts have applied *Rodriguez*'s common authority framework to evaluate a third party's consent to search a container inside a vehicle. See *State v Harding*, 282 P3d 31, 34-41; 697 Utah Adv Rep 54; 2011 UT 78 (2011) (collecting cases). Those foreign courts have determined that officers violate persons' Fourth Amendment rights when searching a bag in a car when officers could not have a reasonable belief that a third party had common authority to consent to the search. *Id*. In citing case law from all of these courts, the Supreme Court of Utah determined that courts evaluate the reasonableness of an officer's actions by analyzing several factors, such as the type of container searched, any identifying material on the outside of the container, the container's location, the number of containers, the number of passengers, and the passengers' conduct. *Id*. at 38-39.

If *Rodriguez* and its extension to searches of containers in automobiles as applied in foreign courts were the law in Michigan, an argument that Officer Burkart lacked a reasonable belief that Taylor had common authority over the backpack would have some merit. A backpack is a container used to store personal items, which suggests individual, rather than common, ownership. See *Harding*, 282 P3d at 38. The relationship between Mead and Taylor suggests that Taylor would not have authority over Mead's personal items. Mead testified that he met Taylor the night of the search. Taylor stated on a video of the traffic stop that Mead was in her car because she was dropping Mead off on her way to another destination. Officer Burkart testified that Mead had the backpack on his lap with his arms resting on either side at the time of the stop. The video shows that Officer Burkart searched the backpack while it was placed in the passenger side of the vehicle. Officer Burkart testified that he believed the backpack belonged to Mead.

However, in Michigan, *Rodriguez*'s common authority framework does not apply to warrantless searches of containers in automobiles. Case law from foreign courts is not binding. *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 414; 761 NW2d 371 (2008). No Michigan Court has successfully applied *Rodriguez*'s common authority framework to warrantless searches, pursuant to consent, of containers in automobiles. To the contrary, this Court attempted to apply the framework to the search of the backpack in *People v LaBelle*, 273 Mich App 214, 221-226; 729 NW2d 525 (2006), rev'd 478 Mich 891 (2007), and concluded that

the deputy had no consent to search the backpack because it was not reasonable for the deputy to believe that the driver had common authority over the backpack. But the Michigan Supreme Court reversed the judgment, reasoned that "[a]uthority to search the entire passenger compartment of the vehicle includes any unlocked containers located therein," and concluded that "[t]he search of the backpack was valid." *Labelle*, 478 Mich at 891-892.

Police officers in Michigan are trained to follow Michigan law. For example, state statutes allow the Michigan Commission on Law Enforcement Standards (MCOLES) to institute and publicize training standards for law enforcement officers. See MCL 28.621; MCL 28.611. The book *Michigan Criminal Law & Procedure: A Manual for Michigan Police Officers* (Kendall Hunt publishing company, 3rd edition, 2009), addresses "search and seizure" "law most commonly applied by police officers in Michigan" as required by MCOLES.[3] The manual cites the Michigan Supreme Court's order in *Labelle* when discussing the scope of a warrantless search of a container pursuant to consent. *Manual*, ch 23, p 343. Specifically, the manual states that a search's scope "turns on whether it is objectively reasonable for the officer to believe that the scope of the consent permits the officer to open a particular closed container" and that the *Labelle* "court held that when police have authority to search the entire passenger compartment of a vehicle, that authority extends to any unlocked containers within the vehicle." *Id*.

Thus, because Mead lacks standing to challenge the validity of the search and because current Michigan law does not apply *Rodriguez*'s common authority framework to warrantless searches of containers in automobiles, we decline to apply *Rodriguez*'s common authority framework to this case.

## IV. OTHER GROUNDS JUSTIFYING THE SEARCH

Finally, the Michigan Supreme Court directed us to consider whether other grounds justified the search of the backpack. We conclude that, under the facts of this case as presented to this panel, no other grounds justified the search.

Both the United States and Michigan constitutions "guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Hyde*, 285 Mich App 428, 438; 775 NW2d 833 (2009) (quotations and citations omitted); See US Const, Am IV; Const 1963, art 1, § 11. "Searches and seizures conducted without a warrant are unreasonable per se, subject to several specifically established and well-delineated exceptions." *People v Brown*, 279 Mich App 116, 131; 755 NW2d 664 (2008) (quotations and citations omitted). A discussion of relevant exceptions follows.

A warrantless search of abandoned property does not violate the Fourth Amendment. *People v Rasmussen*, 191 Mich App 721, 725; 478 NW2d 752 (1991). Fourth Amendment protections apply only when a person has an expectation of privacy in the searched property.

---

[3] Michigan State Police, *Criminal Law and Procedure Manual* <http://www.michigan.gov/msp/0,4643,7-123-3493_57129-140963--,00.html> (accessed July 20, 2017).

See *id*. By definition, a person lacks an expectation of privacy in abandoned property. *Id*. A person had abandoned property when "he voluntarily discarded, left behind, or otherwise relinquished his interest in the property so that he could no longer retain a reasonable expectation of privacy in the property at the time of the search." *Id*. at 726-727. For example, a person abandons a bag when he discards it while running from the police. *People v Lewis*, 199 Mich App 556, 557-560; 502 NW2d 363 (1993).

Mead demonstrated a possessory interest in the backpack by holding it on his lap while in the vehicle. He did not abandon the backpack by leaving it inside the vehicle because leaving a bag inside the vehicle in which you are riding does not equate to discarding, leaving behind, or relinquishing ownership in the item.

A police officer may conduct a protective or *Terry* search of the passenger compartment of a vehicle without a warrant "if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons," "limited to those areas in which a weapon may be placed or hidden." *Michigan v Long*, 463 US 1032, 1049; 103 S Ct 3469; 77 L Ed 2d 1201 (1983), quoting *Terry v Ohio*, 392 US 1, 21; 88 S Ct 1868; 20 L Ed 2d 889 (1968). When evaluating the validity of a search, the " 'issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' " *Id*. at 1050, quoting *Terry*, 392 US at 27.

The protective or *Terry* search exception does not apply here. At no point did Officer Burkart testify that he had a reasonable belief that Taylor or Mead could gain immediate control of a weapon inside the vehicle or testify that he believed his safety or the safety of others was in danger, and the prosecution did not cite this exception as a basis for the search.

An officer may conduct a search incident to arrest without a warrant "whenever there is probable cause to arrest." *People v Nguyen*, 305 Mich App 740, 756; 854 NW2d 223 (2014). To have probable cause for an arrest, the investigating officers "must possess information demonstrating" " 'a probability or substantial chance' " "that an offense has occurred and that the defendant has committed it." *Id*. at 751-752, quoting *People v Lyon*, 227 Mich App 599, 611; 577 NW2d 124 (1998). An officer " 'may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.' " *People v Tavernier*, 295 Mich App 582, 584; 815 NW2d 154 (2012), quoting *Arizona v Gant*, 556 US 332, 351; 129 S Ct 1710; 173 L Ed 2d 485 (2009). "[T]here is no reason to believe that evidence relevant to the crime of arrest would be found in the vehicle" when police are addressing "civil infractions" or a person "driving without a valid license." *Id*. at 586. "[J]ustifying the arrest by the search and at the same time the search by the arrest, just will not do." *Smith v Ohio*, 494 US 541, 543; 110 S Ct 1288; 108 L Ed 2d 464 (1990) (quotations, alterations, and citation omitted). For example, a "search of a container cannot be justified as being incident to an arrest if probable cause for the contemporaneous arrest was provided by the fruits of that search." *People v Champion*, 452 Mich 92, 116-117; 549 NW2d 849 (1996).

In this case, Officer Burkart did not search the backpack incident to the arrest of Mead or Taylor. Officer Burkart stopped the vehicle due to an expired license plate. It is unclear how the vehicle could contain evidence of an expired license plate. Officer Burkart repeatedly testified that he had no intent to arrest Taylor for the infraction. Additionally, Officer Burkart testified that Mead and Taylor admitted to using narcotics. But he did not testify that drug use was the basis for the stop of the vehicle, that either admitted to possessing drugs that night, that either admitted using drugs that night, or that either exhibited signs of being under the influence of narcotics. Upon viewing the video of the traffic stop, it does not appear that Taylor or Mead are within reaching distance of the backpack or passenger compartment of the vehicle at the time of the search. Therefore, Officer Burkart lacked probable cause for a lawful arrest as is required to permit a search incident to arrest.

Police may also search a vehicle or a container within a vehicle without a warrant if they have probable cause that the vehicle or container " 'contains articles that the officers are entitled to seize.' " *People v Garvin*, 235 Mich App 90, 101; 597 NW2d 194 (1999), quoting *People v Armendarez*, 188 Mich App 61, 71-72; 468 NW2d 893 (1991); See also *People v Bullock*, 440 Mich 15, 24; 485 NW2d 866 (1992). Probable cause exists if the totality of the circumstances demonstrates "a substantial basis for concluding that a search would uncover evidence of wrongdoing" and "a fair probability that contraband or evidence of a crime will be found in a particular place." *Garvin*, 235 Mich App at 102 (quotations, alterations, and citations omitted).

The record in Mead's case does not contain evidence that Officer Burkart had probable cause to search the backpack in the automobile. Again, Officer Burkart testified that Mead and Taylor admitted to using narcotics. But he did not testify that drug use was the basis for the stop of the vehicle, that either admitted to possessing or using drugs that night, that he believed the backpack would contain narcotics, or that either exhibited signs of being under the influence of narcotics. And again, the prosecution did not cite this exception as a basis for the search.

An inventory search is a "well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v Bertine*, 479 US 367, 371; 107 S Ct 738; 93 L Ed 2d 739 (1987). "[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v Wells*, 495 US 1, 4; 110 S Ct 1632; 109 L Ed 2d 1 (1990); See also *People v Poole*, 199 Mich App 261, 266; 501 NW2d 265 (1993). Rather, the search "protect[s] an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property" and "guard[s] the police from danger." *Bertine*, 479 US at 372. The search must be conducted reasonably, *id*. at 374, in good faith, *id*., and pursuant to standardized police procedures "designed to produce an inventory," including procedures that "regulate the opening of containers found during inventory searches," *Wells*, 495 US at 4; see also *Poole*, 199 Mich App at 266.

The record lacks evidence as to whether Officer Burkart's search of the backpack fell within the scope of a proper inventory search. Officer Burkart testified that he searches vehicles to "check for valuables or any damage to the vehicle, anything that may be in there" whenever he "tow[s] or impound[s] a vehicle." However, Officer Burkart offered no further explanation of police department policies, did not explain department policy for the search of a container, and did not explain how his search complied with department policy. Therefore, we lack evidence to determine that he conducted a proper inventory search.

-6-

"The inevitable-discovery rule permits the admission of evidence obtained in violation of the Fourth Amendment if the prosecution establishes by a preponderance of the evidence that the information inevitably would have been discovered through lawful means." *People v Mahdi*, 317 Mich App 446, 469; 894 NW2d 732 (2016).

The inevitable discovery exception does not apply here. On appeal, the prosecution only argues that Taylor consented to the search and that Mead lacked standing to contest the search. The prosecution is correct. Even assuming that the search violated Mead's Fourth Amendment rights, the prosecution advanced no other argument that the police inevitably would have discovered the contents of the backpack. We conclude that no other grounds justified the search.

We affirm.

/s/ Peter D. O'Connell
/s/ Michael J. Talbot
/s/ Kirsten Frank Kelly