Murray, J. (concurring in part and dissenting in part).
*429 A Michigan State Police Trooper pulled defendant over for speeding. When the trooper reached the vehicle, he saw approximately a dozen "whippet" or nitrous oxide containers in the backseat, along with some empty pill bottles. Knowing that canisters containing nitrous oxide are used for "huffing," which is illegal under state law, the trooper asked defendant when he last huffed. Defendant answered, "[F]our days ago." The majority concludes that the trooper did not, at that point, have probable cause to search the vehicle. But because defendant admitted to having committed a crime, and the otherwise legal containers that were the apparatus to commit the crime were in plain view, under the controlling law, the trooper had probable cause to arrest defendant without a warrant and search his vehicle. Consequently, for the reasons briefly stated below, the trial court's order should be reversed and the matter remanded for further proceedings.[1]
Upon de novo review of the circuit court's ruling on the motion to suppress evidence, People v. Barbarich , 291 Mich.App. 468, 471, 807 N.W.2d 56 (2011), it is evident that Michigan State Police Trooper Everett Morris had probable cause to search defendant's motor vehicle. More specifically, Trooper Morris had probable cause to believe that defendant had committed a crime under Michigan law and, therefore, could have properly searched the vehicle incident to an arrest. People v. Nguyen , 305 Mich.App. 740, 756, 854 N.W.2d 223 (2014). As the United State Supreme Court made clear many *430 decades ago, the test we are to apply in determining whether probable cause to arrest existed is whether the trooper "had reasonably trustworthy information ... sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." Beck v. Ohio , 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (emphasis added). The probable cause standard does not require that a trooper conclude that actual criminal activity had occurred or was occurring, but only that there was a probability or substantial chance of criminal activity. Illinois v. Gates , 462 U.S. 213, 246, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
Here, it is undisputed that Michigan law permits warrantless arrests when the trooper "has reasonable cause to believe a misdemeanor punishable by imprisonment for more than 92 days or a felony has been committed and reasonable cause to believe *372 the person committed it." MCL 764.15(1)(d) (emphasis added). It is likewise undisputed that "huffing"-That is, inhaling chemicals-is a 93-day misdemeanor, MCL 752.273, and so an officer can arrest an individual without a warrant when reasonable cause exists to believe that huffing occurred. The evidence shows that Trooper Morris had probable cause to arrest defendant without a warrant.
At the evidentiary hearing, Trooper Morris testified that defendant had approximately a dozen "whippits," or nitrous oxide canisters, on the floorboard of his vehicle. Trooper Morris also testified that defendant indicated that he had huffed approximately four days earlier (thus admitting to the commission of a 93-day misdemeanor).[2] and in further discussions with the *431 trooper, admitted that he realized that huffing could damage his brain. These undisputed facts unquestionably lead to the conclusion that Trooper Morris had probable cause to believe that defendant had committed a crime subject to 93 days' imprisonment within the past four days. That there could be an innocent explanation for possessing the canisters (though that is doubtful given defendant's admission) does not deprive the officer of probable cause to arrest. This point has been repeatedly made by the Supreme Court. In Gates , 462 U.S. at 243 n. 13, 103 S.Ct. 2317, the United States Supreme Court emphasized that:
The Illinois Supreme Court thought that the verification of details contained in the anonymous letter in this case amounted only to "[t]he corroboration of innocent activity," [ People v. Gates , ] 85 Ill.2d 376, 390, 423 N.E.2d 887, 893, 53 Ill.Dec. 218 (1981), and that this was insufficient to support a finding of probable cause. We are inclined to agree, however, with the observation of Justice Moran in his dissenting opinion that "[i]n this case, just as in Draper [v. United States , 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) ], seemingly innocent activity became suspicious in the light of the initial tip." Id ., at 396, 53 Ill.Dec. 218, 423 N.E.2d at 896. And it bears noting that all of the corroborating detail established in Draper was of entirely innocent activity -a fact later pointed out by the Court in both Jones v. United States , [362 U.S. 257, 269-270, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) ], and Ker v. California , [374 U.S. 23, 36, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) ].
*432 This is perfectly reasonable. As discussed previously, probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens' [sic] demands . We think the Illinois court attempted a too rigid classification of the types of conduct that may be relied upon in seeking to demonstrate probable cause. See *373 Brown v. Texas , [443 U.S. 47, 52, [99 S.Ct. 2637, 61 L.Ed.2d 357] (1979) ]. In making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts. [Emphasis added.]
See also United States v. Sokolow , 490 U.S. 1, 9-10, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (analogizing Gates and other probable-cause cases to the reasonable-suspicion standard and recognizing that "[a]ny one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion"); State v. Sisco , 239 Ariz. 532, 536, 373 P.3d 549 (2016) (quoting Gates 462 U.S. at 243 n. 13, 103 S.Ct. 2317 and holding that "[p]robable cause, however, does not turn on the 'innocence' or 'guilt' of particular conduct, but instead on the 'degree of suspicion that attaches to particular types of non-criminal acts' ").
Hence, it is not enough for the majority to assert that possession of the canisters in plain view on the car floor was legal because Gates and other cases teach us that whether items are ordinarily "innocent" is not the relevant inquiry. Instead, we must focus on the degree of suspicion attached to those containers. And Trooper Morris testified that he was well aware of the use of "whippits" for huffing, and that huffing was a crime.
*433 Adding to the potential criminal use of the canisters was defendant's candid admission that he had engaged in huffing no more than four days earlier. Thus, the combination of factors (even if some could in isolation be considered facially "innocent" or "legal") presented to Trooper Morris created probable cause to arrest defendant without a warrant and to conduct a search of the vehicle.
That portion of People v. Mead (On Remand ), 320 Mich.App. 613, 908 N.W.2d 555 (2017), relied upon by the majority, does not alter this outcome. In relevant part, that case dealt with whether evidence found in a backpack located in a car could be justified by a search incident to an arrest. Mead , 320 Mich.App. at 616, 908 N.W.2d at 558-59. Our Court properly concluded that it could not because the officer had no reason to believe that "the vehicle could contain evidence of an expired license plate," which was the reason that the officer pulled over the defendant. Id . at 624, 908 N.W.2d at 563. Thus, a search of the backpack could not be supported by an arrest of the defendant for expired plates.
Here, however, Trooper Morris's discovery of the canisters did not result from a search, and there can be no reasonable argument that it did as the canisters were in plain view from Trooper Morris's lawful standpoint. See Texas v. Brown , 460 U.S. 730, 740, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) and People v. Daniels , 160 Mich.App. 614, 620, 408 N.W.2d 398 (1987). Mead 's discussion of what is permissible for a search incident to an arrest would be instructive if the canisters and pill bottles were located in a container within the vehicle, but as these items were in plain view of Trooper Morris, he was free to arrest defendant and search for any additional evidence of a controlled substance violation. See, e.g., *434 United States v. Huff , 782 F.3d 1221, 1226 (C.A. 10, 2015) ("Upon seeing the uncased weapon [in plain view from outside the vehicle], the officers had the requisite probable cause both to conduct a search of the vehicle and to initiate an arrest based upon this weapons violation."), State v. Hunter , 62 So.3d 340, 344 (La. App., 2011) ("Upon making a valid traffic stop, the police officers were lawfully in a position to observe in plain view the clear plastic bag containing cocaine. The evidence of drugs gave the officer probable *374 cause to arrest the defendant and then to search the interior of the vehicle for weapons and evidence as an incident to the lawful arrest. Therefore, the search of the automobile and the seizure of the drugs satisfied the constitutional guidelines for a warrantless search."), and United States v. Sparks , 291 F.3d 683, 690-691 (C.A. 10, 2002) (listing cases standing for the proposition that an officer who gains probable cause from viewing an item in a vehicle can then either search the vehicle under the plain-view doctrine, or arrest the occupant and search the vehicle).
The majority opines that defendant's "statement could not form the basis for probable cause to search defendant's vehicle" because MCL 752.272"addresses intoxication and impairment," and Trooper Morris testified that defendant was neither intoxicated nor impaired. But the statute's language says no such thing. Rather, the statute focuses on the person's reason for taking the prohibited action by stating that a person shall not "for the purpose of" causing intoxication, etc., intentionally inhale or otherwise introduce chemical agents into his or her respiratory or circulatory system. The statute does not require that the person succeed in that purpose, i.e., succeed in getting intoxicated. To the contrary, it simply requires that the person take the prohibited actions for the purpose of achieving intoxication.
*435 For these reasons, I would reverse the trial court's order granting defendant's motion to suppress and remand for further proceedings.

I concur in the majority opinion's determination that this appeal is not moot because the circumstances in the present case are dispositively different than those set forth in People v. Richmond , 486 Mich. 29, 782 N.W.2d 187 (2010).

That this crime occurred, according to defendant, four days earlier, does not alter the outcome. For one thing, the statute of limitations certainly had not expired. Additionally, in the context of information contained in search warrants, the expiration of well more than four days has been held insufficient to cause the evidence to become stale, see, e.g., State v. Lantz , 21 Neb.App. 679, 684-686, 842 N.W.2d 216 (2014), and so too here, where potential evidence of defendant's recent huffing was sitting in plain view of Trooper Morris. And, as the prosecution points out, when assessing the situation before him, Trooper Morris was not required to accept defendant's version of when the crime occurred. Criss v. Kent , 867 F.2d 259, 263 (C.A. 6, 1988).