PEOPLE v NESBITT

Docket No. 90209. Submitted January 21, 1987, at Detroit. Decided February 23, 1987.

Darrell E. Nesbitt was arrested for armed robbery. When Nesbitt was placed in a detention cell, his boots were removed from him in accordance with a departmental policy to remove from detainees all items which might cause harm. A police officer, without a warrant, examined the boots and compared one of them with a plaster cast which had been made of a footprint made by one of the fleeing robbery suspects. When the print from the boot appeared to be the same as a print made from the cast, the police retained the boot. Defendant moved to suppress introduction of his boot and the print made from that boot on the basis that they were the fruit of an unlawful search and seizure. The Wayne Circuit Court, Paul S. Teranes, J., granted the motion to suppress. The people appeal on leave granted.

The Court of Appeals *held:*

It was not unreasonable for the police, without a warrant, to examine and hold as evidence defendant's boot. Accordingly, it was error for the trial court to suppress the admission of the boot and the print made from the boot.

Reversed.

SEARCHES AND SEIZURES — PERSONAL EFFECTS — SEARCH WITHOUT A WARRANT — CRIMINAL LAW.

The police, without a warrant, may properly examine and hold as evidence boots worn by an accused at the time of his arrest and removed from the accused as a matter of departmental policy at the time of his being placed in a detention cell at the jail where the purpose of the examination and retention of the boots was to compare them with casts made of the footprints

REFERENCES

Am Jur 2d, Searches and Seizures §§ 37, 92, 93.

Fourth Amendment as protecting prisoner against unreasonable searches or seizures. 32 ALR Fed 601.

Search and seizure, necessity that police obtain warrant before taking possession of, examining, or testing evidence discovered in search by private person. 47 ALR4th 501.

made by a person involved in the crime for which the accused was arrested.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Criminal Division Research, Training and Appeals, and *Jan J. Raven,* Assistant Prosecuting Attorney, for the people.

*Kraizman & Kraizman* (by *Jack J. Kraizman*), for defendant.

Before: SULLIVAN, P.J., and GRIBBS and E. C. PENZIEN,* JJ.

PER CURIAM. The people appeal from the January 24, 1986, order of the Wayne Circuit Court suppressing evidence against defendant, Darrell Eugene Nesbitt. We reverse.

At an evidentiary hearing held on January 15, 1986, John Axel Hlinak testified that he was employed as a Romulus police officer on November 11, 1985. At approximately 1:20 A.M., while on routine patrol, he observed a vehicle speeding northbound on Middlebelt Road. He had received information that an armed robbery had just taken place at a restaurant approximately one-half mile south of his location. The information, which was relayed by radio, indicated that there were two armed black suspects driving northerly on Middlebelt in a black and silver Buick.

Officer Hlinak saw a black Oldsmobile with two black individuals in it. When he started to pull up behind the vehicle and activate his emergency equipment, the vehicle took off. A chase ensued. Eventually, the vehicle stopped and the two sus-

* Circuit judge, sitting on the Court of Appeals by assignment.

pects ran different ways on foot. Hlinak chased the driver on foot for two or three blocks, but lost him. The driver was black, approximately 5′8″ tall, medium built, and was wearing a light colored shirt and dark pants. The officers then discovered that the Oldsmobile was a stolen vehicle. A search of the vehicle yielded the cash from the armed robbery.

Officer Hlinak returned to the station where he picked up some plaster casting equipment. He returned to the scene of the chase, where he saw two sets of footprints, his and the suspect's. Officer Hlinak took pictures of the footprints and made a plaster cast of the suspect's footprint. Hlinak returned to the station, where he compared the footprint cast to the boot of the suspect, who had been arrested and was in lockup. The department had a policy of removing all personal property, belts, boots and anything else that could cause harm from suspects headed for the D Cell detention area. Defendant's boots were standing outside the door of his cell. Hlinak made a print of them, which he compared with a print made from the plaster cast. The footprints appeared to match. Officer Hlinak gave the boots and the cast to the State Police Department. He did not try to obtain a search warrant to seize the boots.

Michael Joseph Giroux testified that, on November 11, 1985, he was a police officer for the City of Romulus. On that date, he had been dispatched to the scene of a robbery at the Flag Restaurant on Middlebelt. When defendant was arrested for the robbery, he was wearing a white shirt and wet and muddy shoes. The field where Officer Hlinek chased defendant was less than a mile from the trailer park where defendant was arrested.

It was stipulated that the booking officer removed defendant's boots and placed them in the

area outside defendant's cell. The routine procedure is to take the boots from a prisoner when he or she is placed into the cell and to return the boots if the prisoner is transported somewhere else.

On appeal, the people argue that the circuit judge erred in suppressing defendant's boots and prints made from them as fruits of an illegal search and seizure, since defendant was lawfully in custody at the time the boots were taken from him as a routine policy measure. We agree.

Defendant's successful argument to the circuit court was based on the Supreme Court's holding in *People v Trudeau,* 385 Mich 276; 187 NW2d 890 (1971), cert den 405 US 965 (1972). In that case, the defendant's shoes were seized without a warrant while he was incarcerated at a county jail on an unrelated charge. The Court noted that the seizure was not justified by the plain view doctrine, that the defendant was not advised of his constitutional rights, that the officer was acting on a "mere suspicion," and that the link between the shoes and the heel print found at the scene was not established until after the shoes were examined for a week by an expert. The Court further noted: "This holding is not to be construed as in any way affecting essential steps which must be taken by the police in processing a prisoner as outlined in *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), and to assure the protection of police and of other prisoners." *Trudeau, supra,* p 281.

*Trudeau* is distinguishable from the case at bar. In that case, the defendant was imprisoned on another charge; in this case, defendant was arrested for the crime of which the boots were evidence, and he does not suggest that the arrest was illegal. The officer was not acting on a mere

suspicion when he examined defendant's boots; rather, he had chased defendant through a muddy field just prior to his arrest. We also note that defendant's boots were taken from him as a matter of departmental policy concerning the processing of prisoners, while the *Trudeau* defendant was required to give his shoes to the police, despite his refusal to do so.

In *People v Brooks,* 405 Mich 225, 247-248; 274 NW2d 430 (1979), the Michigan Supreme Court noted that it was not unreasonable for police to examine and hold as evidence the personal effects of an accused in their lawful custody as the result of a lawful arrest. See also *United States v Edwards,* 415 US 800; 94 S Ct 1234; 39 L Ed 2d 771 (1974), and *People v Spencer,* 93 Mich App 605, 607; 286 NW2d 879 (1979). We conclude that the trial court erred by suppressing the evidence obtained from the seizure of defendant's boots. See *People v Cicotte,* 133 Mich App 630, 633-634; 349 NW2d 167 (1984).

Reversed and remanded.