*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAUWAN TIMS,

Defendant-Appellant.

UNPUBLISHED
March 19, 2020

No.  344222
Wayne Circuit Court
LC No.  17-010721-01-FC

Before:  M. J. KELLY, P.J., and FORT HOOD and BORRELLO, JJ.

PER CURIAM.

On June 8, 2017, at about 4:00 a.m. near Manistique and Frankfurt Streets in the city of Detroit, defendant savagely beat and robbed Dorian Richardson.  Among other evidence connecting defendant to the crime was defendant's admission to a police officer that he and the victim had gotten into a fight, as well as DNA evidence.  Defendant was convicted of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, unarmed robbery, MCL 750.530, assault with a dangerous weapon (felonious assault), MCL 750.82, and possessing a firearm (pneumatic gun) while committing a felony (felony-firearm), MCL 750.227b.  Defendant was sentenced to concurrent prison terms of 20 to 40 years for the AWIGBH conviction, 10 to 40 years for the robbery conviction, 4 to 15 years for the felonious assault conviction, and to a two-year consecutive term for the felony-firearm conviction.  We vacate defendant's conviction for felonious assault and sentence for AWIGBH, but otherwise affirm.  We remand for resentencing on the AWIGBH conviction.

## I.  SUFFICIENCY AND GREAT WEIGHT OF THE EVIDENCE

Defendant first argues that the evidence was insufficient to sustain his convictions, or alternatively, that the jury's verdict was against the great weight of the evidence.  We disagree.

A claim that the evidence is insufficient is reviewed de novo on appeal.  *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).  An appellate court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that all of the elements of the offense were proved beyond a reasonable doubt.  *Id*. Circumstantial evidence and reasonable inferences may be sufficient for rational trier of fact to

find that all of the elements of an offense were proved beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Review is deferential, with the appellate court making all reasonable inferences and resolving credibility conflicts in favor of the jury verdict. *Id*. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Also, a prosecutor need not negate every reasonable theory of innocence, but must only prove guilt beyond a reasonable doubt despite any contrary evidence the defendant provides. *People v Konrad*, 449 Mich 263, 273, n 6; 536 NW2d 517 (1995).

With respect to the great weight of the evidence, defendant failed to preserve his claim that the jury's verdict was against the great weight of the evidence by moving in the trial court for a new trial on that ground. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003). Thus, that claim is reviewed for plain error affecting substantial rights. *Id*. at 218. "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id*. at 219.

Defendant contends that he was never identified by any witness as the perpetrator of the crime, and that his identification as the perpetrator was based solely on unreliable circumstantial evidence. Moreover, defendant notes that there was no direct evidence linking him to any of the property taken from the victim. We disagree.

The testimony of defendant's girlfriend placed defendant in the area of the assault shortly before it occurred. Two witnesses testified that a person wearing dark clothing pointed to the victim in the street and told the victim that he was dead and that he had been disrespectful. Defendant was then arrested nearby within an hour or two of the assault wearing blood-spattered clothing matching the description of the assailant's clothing. He was in possession of money and two necklaces. The arresting police agency gave one of the necklaces to a Detroit police detective investigating the assault, and the victim's sister identified the necklace as one habitually worn by the victim. DNA testing later showed a high statistical probability that blood found on the shoes defendant was wearing when arrested, and on broken pieces of a B.B. gun found near the scene of the crime, belonged to the victim.

Additionally, Detroit police detectives obtained a written statement from defendant after defendant waived his *Miranda*[1] rights. In his written statement, defendant described having a confrontation with the victim, who he knew as "D-Baby." Defendant stated that during a fist fight, both he and the victim went to the ground but defendant got up first and kicked the victim with the heel of his boot. Defendant also stated that he beat the victim with a B.B. gun, and that he took cigarettes, a cellphone, and about $11.00 from the victim.

In light of the above, we cannot agree with defendant that the evidence was entirely circumstantial and unreliable, or that it failed to show a direct link between defendant and the assault or between defendant and the broken B.B. gun or stolen property. The circumstantial

---

[1] See *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

evidence, the reasonable inferences derived from that evidence, and defendant's written statement, were more than sufficient for a rational trier of fact to find that all elements of the crimes were proved beyond a reasonable doubt. *Nowack*, 462 Mich at 400; *Meissner*, 294 Mich App at 452. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Hardiman*, 466 Mich at 428. Moreover, no evidence preponderated heavily against the jury's verdict, and thus the convictions were not against the great weight of the evidence. *Musser*, 259 Mich App at 218-219.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts numerous claims of ineffective assistance of counsel. A claim of ineffective assistance of counsel presents a mixed question of law and fact. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Appellate review of a trial court's findings of fact, if any, is for clear error, and the constitutional question is reviewed de novo. *Id*. Because no evidentiary hearing has been held, our review is limited to errors apparent on the record. *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).

To establish that ineffective assistance of counsel warrants reversal, a convicted defendant must show "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id*. at 51. The defendant "must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003). Additionally, the defendant bears the burden to prove the factual predicate of his claim, *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), and must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). This Court will not substitute its judgment for that of counsel on matters of trial strategy, nor use the benefit of hindsight to assess counsel's competence. *Unger*, 278 Mich App at 242-243.

First, defendant states that defense counsel provided ineffective assistance by not moving to suppress his statement because defendant did not sign or initial it, by not moving to suppress evidence that was illegally seized, and by not requesting an instruction on self-defense. Defendant does not present any factual development or pertinent legal authority to support these conclusory assertions, and we note that the mere announcement of a position on appeal with little or no factual development or citation to supporting authority constitutes an abandonment of the issue. See *People v Iannucci*, 314 Mich App 542, 545, 547; 887 NW2d 817 (2016) ("The failure to brief the merits of an allegation of error constitutes an abandonment of the issue.") (quotation marks and citation omitted). Notwithstanding, defendant's failure to properly brief the merits of these issues, we have elected to briefly address them below.

## A. FAILURE TO SUPPRESS DEFENDANT'S STATEMENT

Defendant argues that counsel erred by not moving to suppress his statement because (1) he never actually signed the statement; (2) it was not recorded as required by MCL 763.8; and (3) the prosecution could not prove that he voluntarily, knowingly, and intelligently waived his *Miranda* rights. We disagree.

Preliminarily, the statement of an accused made during custodial interrogation is inadmissible unless the accused voluntarily, knowingly and intelligently waives his Fifth Amendment rights. See *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966); *People v Harris*, 261 Mich App 44, 55; 680 NW2d 17 (2004). "The prosecutor must establish a valid waiver by a preponderance of the evidence." *Harris*, 261 Mich App at 55. Furthermore, MCL 763.8(2) provides: "A law enforcement official interrogating an individual in custodial detention regarding the individual's involvement in the commission of a major felony shall make a time-stamped, audiovisual recording of the entire interrogation." The original primary charge brought against defendant in this case was assault with intent to murder, which is "punishable by imprisonment in the state prison for life or any number of years," MCL 750.83, and is therefore a "major felony," MCL 763.7(d), to which MCL 763.8(2) applies.

Defendant was interrogated concerning the charges in this case on June 13, 2017, by Detroit Police Detective Santonion Adams while defendant was in the custody of the Michigan Department of Corrections (MDOC). Detective Adams interviewed defendant at the Detroit Reentry Center, an MDOC correctional facility. Detective Flora Blanding and MDOC Agent Christopher Korycinski were present and witnessed defendant waiving his *Miranda* rights and making a statement. Before taking the statement, Detective Adams confirmed that defendant could read and write, and advised defendant orally and using a written statement form that he would be waiving his constitutional rights. Defendant stated that he understood his rights, and he signed and initialed the "constitutional rights, certification of notification" form, which was also signed by Detective Blanding and Agent Korycinski as witnesses. Detective Adams testified that after he wrote down every question and answer, defendant would review it for accuracy and then initial it; defendant also reviewed the entire statement after it was completed and signed each page. The four-page document, the first page of which was the constitutional rights waiver form, was properly admitted into evidence.

Detective Blanding testified that the interview room at the Detroit Reentry Center was arranged by Agent Korycinski. Unlike Detroit police facilities, it was not equipped to record the interview. Detective Blanding assumed that the interview was being recorded in the same manner that it would have been had it been taken at the nearby Detroit Detention Center. Both detectives testified that it was contrary to Detroit's practice and protocol to not videorecord an interview like the one at issue here. And indeed, audiovisual recordings of interrogations of individuals suspected to be involved in major felonies are required by MCL 768.8(2). However, the failure to comply with the statute "does not prevent any law enforcement official present during the taking of the statement from testifying in court as to the circumstances and content of the individual's statement if the court determines that the statement is otherwise admissible." MCL 763.9.

At best, counsel could have requested and obtained a jury instruction "that it is the law of this state to record statements of an individual in custodial detention who is under interrogation for a major felony and that the jury may consider the absence of a recording in evaluating the evidence relating to the individual's statement." MCL 763.9. Defense counsel's performance arguably fell below an objectively reasonable standard in failing to request such an instruction, *Trakhtenberg*, 493 Mich at 51, but defendant cannot establish that this error more than likely prejudiced the defense. *Id.*; *Riley*, 468 Mich at 140. The fact that the police failed to follow their own protocol and practice by not recording the interview was stressed by defense counsel during his cross-examination and during closing argument. Indeed, counsel argued that the police

purposely did not follow proper procedure and were not worthy of belief, i.e., that the police were lying.

And although the trial court did not give a specific instruction regarding the failure to record the statement, it did instruct the jury as to witness credibility in general. The trial court also instructed the jury that before it could consider the statement that the prosecution "claim[ed] the defendant made," it had to find "that the defendant actually made the statement," and in doing so, the jury was to "think about how and when the statement was made." In other words, the police officer's credibility and the circumstances of the failure to record the statement were properly before the jury to determine whether defendant actually made the statement that was admitted in evidence. There is not a reasonable probability that the outcome of the trial would have been different had the jury been given a specific instruction pursuant to MCL 763.9. *Trakhtenberg*, 493 Mich at 51.

In sum, while subject to custodial interrogation at a correctional facility, the record evidence shows that defendant explicitly waived his *Miranda* rights, and that his statement was knowing, intelligent, and voluntary under the totality of the circumstances. *Harris*, 261 Mich App at 55; *People v Matthews*, 22 Mich App 619, 627-631; 178 NW2d 94 (1970); *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005). There would have been no legal basis for the trial court to grant a motion to suppress the statement, and defense counsel was not ineffective for failing to make a futile or meritless motion to suppress. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010); *Unger*, 278 Mich App at 256-247.

## B. ILLEGAL SEARCH AND SEIZURE

In his Standard 4 brief, defendant asserts that his counsel erred by not moving to suppress his clothing that was seized without a search warrant and not contemporaneous with his arrest. In his Amended Standard 4 brief, defendant also asserts that counsel erred by not pursuing defenses revealed in discovery materials. Specifically, defendant asserts that a Grosse Pointe Park police report concerning his arrest in that jurisdiction on the morning of the offenses on an unrelated complaint of larceny from motor vehicles (1) did not contain witness statements from the complainants in the Grosse Pointe Park case; and (2) did not mention the victim in this case; and (3) that the Grosse Pointe Park police assigned a different evidence tag number to the gold and silver chain necklace found in defendant's possession when arrested than the evidence tag number that Detroit police later assigned to the necklace after it was given to them.

First, the contention that defense counsel erred by not pursuing defenses purportedly revealed in the Grosse Pointe Park police report has no factual or legal merit. That police agency did not investigate the assault in this case, so failing to mention the victim is not material. Similarly, whether this police report has deficiencies regarding the criminal case in that jurisdiction has no impact on the Detroit case. Further, whether the Grosse Pointe Park police and Detroit police assigned different evidence tag numbers to the same item provides no basis for suppressing the evidence and is not material.

Defendant also takes issue with counsel's failure to move to suppress certain physical evidence obtained by Detroit police without a warrant and not contemporaneous with his arrest. It is assumed that this factually and legally undeveloped claim relates to the victim's necklace that

Detroit police obtained from the Grosse Pointe Park police, an identification card of defendant's found in his girlfriend's car after it was abandoned near the crime scene, and the obtaining of defendant's clothing and shoes from the MDOC at the Detroit Reentry Center.

The right to be protected against unreasonable searches and seizures is guaranteed by both the United States and Michigan Constitutions. US Const, Am IV; Const 1963, art 1, § 11; *People v Slaughter*, 489 Mich 302, 310-311; 803 NW2d 171 (2011). These constitutional provisions do not forbid all searches and seizures, only those that are unreasonable. *Id*. at 311. In a criminal case, a search or a seizure conducted without a warrant is generally unreasonable unless, under the circumstances, both probable cause and an exception to the requirement of a judicial warrant exists. *People v Borchard-Ruhland*, 460 Mich 278, 293-294; 597 NW2d 1 (1999); *People v Davis*, 442 Mich 1, 10; 497 NW2d 910 (1993). Recognized exceptions to the warrant requirement include searches and seizure incident to lawful arrests, and automobile searches and seizures that are based on probable cause. *Slaughter*, 489 Mich at 311; *Davis*, 442 Mich at 10. "[I]t is difficult to perceive what is unreasonable about the police's examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest." *United States v Edwards*, 415 US 800, 806; 94 S Ct 1234; 39 L Ed 2d 771 (1974); see also *People v Brooks*, 405 Mich 225, 247-248, 274 NW2d 430 (1979 (following *Edwards*), and *People v Nesbitt*, 159 Mich App 740, 744; 407 NW2d 4 (1987). The usual remedy if the police have seized evidence in violation of an accused's constitutional protections is to exclude that evidence from any prosecution of the accused. See *People v Goldston*, 470 Mich 523, 528; 682 NW2d 479 (2004).

To be able to assert a claim that an illegal search or seizure has occurred, the police activity must intrude on a constitutionally protected property interest of the accused or have violated an accused's reasonable expectation of privacy. See *United States v Jones*, 565 US 400, 404-406; 132 S Ct 945; 181 L Ed 2d 911 (2012); *People v Gingrich*, 307 Mich App 656, 661-662; 862 NW2d 432 (2014). Constitutional rights are personal and an accused must have standing to assert that an illegal search or seizure occurred. *People v Smith*, 420 Mich 1, 17; 360 NW2d 841 (1984). The concepts of standing and of having a protectable search and seizure interest are virtually synonymous. *Id*. at 24. An accused has standing to challenge a search or seizure when the accused had an expectation of privacy in the object of the search and seizure, an expectation that society is prepared to recognize as reasonable. *Id*. at 28. Whether standing exists to challenge a search or seizure is determined by examining the totality of the circumstances and the accused has the burden of establishing standing. *People v Mahdi*, 317 Mich App 446, 459; 894 NW2d 732 (2016).

Here, the victim was assaulted in Detroit between 4:00 a.m. and 4:30 a.m., and defendant was lawfully arrested later that same morning around 5:30 a.m. by Grosse Pointe Park police on unrelated charges. In connection with his arrest, the Grosse Pointe Park police seized the clothing that defendant was wearing, as well as suspected stolen property, including the victim's chain necklace. Because defendant was on parole, the Grosse Pointe Park police transferred him and his clothing to the custody of the MDOC at the Detroit Reentry Center. There, the Detroit police obtained a confession from defendant after he waived his *Miranda* rights, and obtained defendant's clothing, which DNA testing later showed was spotted with stains of the victim's blood. Moreover, defendant's girlfriend informed the Detroit police that, on the morning of the assault, she had abandoned her Grand Am and defendant at the location of the assault. The police impounded the abandoned car and found defendant's identification card inside.

Defendant would either have been unable to establish that he had standing to challenge any police search regarding the physical evidence at issue, or unable to establish that the seizure of these items was constitutionally unreasonable. MCL 791.236(19), with respect to the granting of parole, provides: "The parole order shall require the parolee to provide written consent to submit to a search of his or her person or property upon demand by a peace officer or parole officer." Also, prisoners and pretrial detainees, in general, have no reasonable expectation of privacy while in lawful custody. See *Hudson v Palmer*, 468 US 517, 530; 104 S Ct 3194; 82 L Ed 2d 393 (1984); *People v Herndon*, 246 Mich App 371, 397; 633 NW2d 376 (2001); *People v Ramsdell*, 230 Mich App 386, 402; 585 NW2d 1 (1998) ("Fourth Amendment protection against unreasonable searches and seizures . . . is inapplicable to prisoners."); *People v Phillips*, 219 Mich App 159, 162; 555 NW2d 742 (1996) (extending *Hudson* "to pretrial detainees and inmates confined in jails").

Defendant cannot establish that the police invaded a protected property interest or a reasonable expectation of privacy with respect to the stolen necklace he possessed at the time it came into possession of the police incident to his lawful arrest. *Mahdi*, 317 Mich App at 459; *Gingrich*, 307 Mich App at 661-662. Therefore, defendant lacked standing to assert a search or seizure claim with regard to the necklace. Similarly, defendant would be unable to establish that the police invaded a protected property interest or a reasonable expectation of privacy with respect to the search of his girlfriend's abandoned car based on probable cause that resulted in the seizure of defendant's identification card. See *People v Taylor*, 253 Mich App 399, 406-407; 655 NW2d 291 (2002). Additionally, defendant would not have been able to establish that he had standing to challenge the seizure of his clothing and shoes at the Detroit Reentry Center after the police developed probable cause to believe that defendant had committed the bloody assault on the victim hours before his arrest about one mile from the crime scene and that the clothing and shoes might contain the victim's DNA. As a parolee-prisoner in lawful custody, defendant lacked a reasonable expectation of privacy. MCL 791.236(19); *Ramsdell*, 230 Mich App at 402; *Phillips*, 219 Mich App at 162. Moreover, to the extent that defendant could assert a property interest in his clothing and shoes, the seizure by the Detroit police was based on probable cause to believe that they were evidence of a crime. *Edwards*, 415 US at 806-807; *Nesbitt*, 159 Mich App at 744.

## C. FAILURE TO REQUEST SELF-DEFENSE INSTRUCTION

Defendant's claim that counsel erred by not requesting an instruction on self-defense is also without merit. Nothing in the record suggests that defendant ever pursued such a defense and the trial evidence would not have supported it. Lawful self-defense requires evidence showing that the defendant: (1) honestly and reasonably believed that he was in danger, (2) the danger feared was death or serious bodily harm, (3) the defendant's actions appeared at the time to be immediately necessary, and (4) the defendant was not the initial aggressor. *People v Riddle*, 467 Mich 116, 126-127; 649 NW2d 30 (2002); *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013). The only evidence supporting self-defense was defendant's statement that initially the victim "swung on me and busted my lip." But defendant has never claimed that he feared for his life or that he might have suffered serious bodily harm. Rather, defendant stated that he knocked the victim down, kicked him with the heel of his boot, and beat the victim with a B.B. gun; other evidence showed that the victim was left in a bloody, comatose state in the street. Jury instructions that lack evidentiary support should not be given. *People v Crawford*, 232 Mich App 608, 619; 591 NW2d 669 (1998). Defense counsel was not ineffective for failing to make a meritless request for an instruction on self-defense. *Unger*, 278 Mich App at 256-257.

-7-

## III. RIGHT TO A SPEEDY TRIAL

Defendant next asserts a preserved claim that the trial court erred by denying his motion to dismiss, which was based on the right to a speedy trial. *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999). A trial court's decision on a motion to dismiss is reviewed for an abuse of discretion. *People v Waclawski*, 286 Mich App 634, 645; 780 NW2d 321 (2009). The court's factual findings are reviewed for clear error; the constitutional issue is a question of law reviewed de novo. *Id*. at 664; *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006).

The right to a speedy trial is guaranteed to criminal defendants by both the federal and Michigan constitutions. US Const, Am VI; Const 1963, art 1, § 20; *Williams*, 475 Mich at 261; *People* v *Patton*, 285 Mich App 229, 236 n 4; 775 NW2d 610 (2009). In determining whether pretrial delay violated a defendant's right to a speedy trial, Michigan applies the four-part test articulated in *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972). See *Cain*, 238 Mich App at 112. Courts are required to "consider and balance: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Patton*, 285 Mich App at 236 n 4. "Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Williams*, 475 Mich at 262. But where the delay is less than 18 months, the defendant must prove that the delay caused the defendant to suffer prejudice. *Patton*, 285 Mich App at 236 n 4.

For purposes of calculating the delay when considering the constitutional right to a speedy trial, our Supreme Court has held that the right "runs from the date of the defendant's arrest." *Williams*, 475 Mich at 261, citing *United States v Marion*, 404 US 307, 312; 92 S Ct 455; 30 L Ed 2d 468 (1971). More specifically, the *Marion* Court held that "the Sixth Amendment speedy-trial provision has no application until the putative defendant in some way becomes an 'accused,' " which does not occur until "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." *Marion*, 404 US at 313, 320.

In this case, although Grosse Pointe Park police arrested defendant on the same day as the instant offenses, June 8, 2017, the arrest charges were not related to this case. After his arrest on June 8, 2017, defendant was transferred to the custody the MDOC in connection with his parole on prior convictions. Detroit did not first issue the instant charges until later. Defendant was not arraigned on the first complaint and warrant until August 20, 2017. These first charges were dismissed in September 2017, when witnesses failed to appear for the preliminary examination. They were reissued on September 14, 2017. The reissued charges were later dismissed in circuit court on November 28, 2017, when the prosecution was not prepared to proceed to trial because DNA testing had not been completed. The third and final complaint and warrant were authorized on November 28, 2017, and defendant was bound over to circuit court on December 11, 2017. The trial court heard and denied defendant's speedy-trial motion on January 18, 2018, and trial commenced on March 28, 2018. Thus, while the actual speedy-trial delay appears to be about 7½ months instead of the 9 months that defendant claims, the difference is not material given that defendant presented no evidence or argument below or on appeal that the delay caused his defense any prejudice. *Patton*, 285 Mich App at 236 n 4; *Cain*, 238 Mich App at 112.

The trial court denied defendant's motion because defendant failed to satisfy his burden of showing that the less-than-18-month delay caused him any prejudice. On appeal, defendant claims

that unspecified witnesses and unspecified evidence "disappeared" because of pretrial delay. While a defendant's loss of liberty is of serious concern to a pretrial detainee, the more serious concern of pretrial delay is that which impairs a defendant's ability to assert a defense to the pending charges. *Williams*, 475 Mich at 264. However, this Court has held that these types of unspecific general allegations of prejudice are not sufficient to establish that an accused has been denied his constitutional right to a speedy trial. *People v Gilmore*, 222 Mich App 442, 462; 564 NW2d 158 (1997). Consequently, the trial court did not clearly err by finding that defendant had not met his burden of showing that the pretrial delay in this case caused the defendant any prejudice to his defense. *Waclawski*, 286 Mich App at 664; *Cain*, 238 Mich App at 112. Further, because defendant's right to a speedy trial was not violated, the trial court did not abuse its discretion by denying defendant's motion to dismiss. *Patton*, 285 Mich App at 236 n 4; *Cain*, 238 Mich App at 112.

## IV. DEFENDANT'S HABITUAL-OFFENDER STATUS

Next, defendant argues that the prosecutor did not timely file a notice of habitual-offender sentence enhancement, that defendant was not arraigned as a habitual offender, and that the prosecutor did not follow procedure dictated by MCR 6.112(C) and MCL 769.13(2). Therefore, defendant asserts, he was erroneously sentenced under the habitual-offender statutes and remand for resentencing without the habitual-offender enhancement is required. Defendant raises a procedural issue that relates to the substantive ability of the trial court to sentence him as a habitual offender. See e.g., *People v Morales*, 240 Mich App 571, 574; 618 NW2d 10 (2000). Because defendant did not raise this issue in the trial court, it is not preserved for appeal. *People v Carines*, 460 Mich 750, 761-762; 597 NW2d 130 (1999).

A written notice of the prosecution's intent to seek enhancement of a sentence under the habitual-offender statutes must be filed with the court "within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived or eliminated, . . . within 21 days after the filing of the information charging the underlying offense." MCR 6.112(F); see also MCL 769.13(1). Within the same timeframe, the notice must be "served upon the defendant or his or her attorney . . . at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings." ." MCL 769.13(2). The "prosecuting attorney shall file a written proof of service with the clerk of the court." *Id.*

Defendant contends that the procedural notice requirements of MCL 769.13, including the filing of a proof of service with the trial court, MCL 769.13(2), must be strictly enforced and that any deviation precludes enhancing his sentence as a habitual offender. However, the procedural deficits that defendant asserts are all contradicted by the record, except that the prosecuting attorney did not file a written proof of service with the clerk of the court. This deficiency is harmless. See MCR 6.112(G).

The record reflects that defendant received actual notice of the prosecutor's intent to seek habitual-offender enhancement and suffered no prejudice by the lack of a written proof of service being filed in the trial court. All three of the charging documents (complaint, warrant, and information) were filed in the district court on November 28, 2017, when the complaint was authorized, and included notice of the fourth-offense habitual-offender enhancement. On

November 29, 2017, defendant was arraigned in the district court on the complaint and was informed of the underlying charges and of the habitual-offender, fourth-offense notice. After a preliminary examination, defendant was bound over to circuit court where he appeared with his attorney for arraignment on December 20, 2017. At the arraignment, defendant's attorney waived the formal reading of the information and defendant stood mute; a not-guilty plea was entered. Defendant does not claim that his attorney was not provided a copy of the information, containing the habitual-offender notice, before the arraignment, as required by MCR 6.113(B). See *People v Head*, 323 Mich App 526, 544-545; 917 NW2d 752 (2018).

At a final pretrial conference on February 28, 2018, the assistant prosecutor stated that no plea offer had been extended to defendant. The case was adjourned so that defense counsel could talk to the assistant prosecutor's supervisor regarding a possible plea agreement. On March 13, 2018, the parties again appeared for a final pretrial conference. The prosecutor remained unwilling to reduce the charges and defense counsel sought a sentence understanding from the trial court pursuant to *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993). The trial court noted that defendant "is being charged as a habitual fourth, based on prior offenses, including a felonious assault, in the last few years." The trial court also noted that, based on his understanding, the victim had "severe and permanent brain injuries" and was "incapable of taking care of himself." The court stated that a proper sentence might be "two years on the felony firearm; plus twenty-five years to some . . . number on the tail." Defense counsel stated that he had communicated the trial court's preliminary understanding of a proper sentence to defendant, who wished to proceed with the scheduled trial.

Clearly, this record shows that defendant was fully informed of the habitual-offender notice, and received a copy of the notice either personally or by his attorney. He makes no claim that anything in the notice concerning his prior convictions is inaccurate. Indeed, at the sentencing hearing on April 20, 2018, defense counsel and defendant confirmed that there were no inaccuracies in the reporting of defendant's prior convictions in the presentence investigation report. Under these circumstances, like in *Head*, although the prosecutor failed to file a proof of service of the habitual notice, "the error is harmless because defendant had actual notice of the prosecutor's intent to seek an enhanced sentence and defendant was not prejudiced in his ability to respond to the habitual-offender notification." *Head*, 323 Mich App at 544. Defendant has not established that plain error affected his substantial rights or seriously affected the fairness, integrity, or public reputation of the proceeding. *Carines*, 460 Mich at 763.[2]

## V. SENTENCE DEPARTURE

Defendant next argues in his supplemental brief on appeal and in his amended Standard 4 brief that his sentence of 20 to 40 years for AWIGBH was an abuse of discretion because it was a

---

[2] We note defendant's brief suggestion in his Standard 4 brief that his counsel was ineffective for failing to raise defects in the habitual-offender notice. For the reasons outlined above, however, any error of counsel in this regard was not outcome-determinative and, therefore, defendant's claim of ineffective assistance fails. See *Riley (After Remand)*, 468 Mich at 140 (To establish ineffective assistance of counsel, a defendant "must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense.").

departure from the guidelines and based on factors already accounted for, and was therefore an unreasonable sentence that violated the principle of proportionality. With this, we agree.

A sentence in a criminal case must be reasonable. *People v Lockridge*, 498 Mich 358, 365, 392; 870 NW2d 502 (2015). The trial court's determination of a reasonable sentence is reviewed for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' . . . 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Id*. at 459-460, quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). A sentence that is disproportionate to the circumstances of the offense and the offender falls outside the range of principled outcomes. *Steanhouse*, 500 Mich at 471, 476; *Milbourn*, 435 Mich at 656. We review the trial court's factual determinations for clear error; the findings must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

Our Supreme Court has held, based on constitutional principles, that the sentencing guidelines are advisory only, in all applications and in all cases. *Steanhouse*, 500 Mich at 466, 470; *Lockridge*, 498 Mich at 365, 399. This means that trial courts are not required to justify a departure from a guidelines recommended sentence range by articulating substantial and compelling reasons. *Lockridge*, 498 Mich at 391-392. "Sentencing courts must, however, continue to consult the applicable guidelines range and take it into account when imposing a sentence." *Id*. at 392. The sentencing guidelines remain "a highly relevant consideration" that trial courts "must consult and take into account when sentencing." *Steanhouse*, 500 Mich at 474-475 (citation and quotation marks omitted). Therefore, trial courts must follow statutory directions to score the sentencing guidelines, *Lockridge*, 498 Mich at 392 n 28, and consult and consider the guidelines recommendation when imposing sentences. The trial court's determination that a sentence is appropriate must only be reasonable, *id*. at 365, 392, and an appellate court must determine if the trial court abused its discretion by imposing a sentence that violates the " 'principle of proportionality' . . . 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse*, 500 Mich at 459-460, quoting *Milbourn*, 435 Mich at 636. To facilitate appellate review, a court must justify the sentence it imposes. *Lockridge*, 498 Mich at 392.

First, we note that, contrary to defendant's assertion on appeal, defendant's sentence did not constitute a 106-month departure. Given the facts and circumstances of this case, the "applicable guidelines range" that the trial court was required to consult and consider when imposing a sentence for defendant's AWIGBH conviction was that determined for the offense of robbery, which was 50 to 200 months based on the sentence grid box of E-V. See MCL 777.64. In this case, defendant was convicted of both unarmed robbery, a class C offense, MCL 777.16y, and AWIGBH, a class D offense, MCL 777.16d. With respect to determining the "applicable guidelines range" in this case, MCL 777.21(2) provides: "If the defendant was convicted of

-11-

multiple offenses, subject to section 14 of chapter XI, score each offense as provided in this part." Section 14 of chapter XI is MCL 771.14, which provides in pertinent part:

> (2) . . . A presentence investigation report prepared under subsection (1) shall include all of the following:
>
> * * *
>
> (e) For a person to be sentenced under the sentencing guidelines . . ., all of the following: . . .,
>
> * * *
>
> (*ii*) Unless [a consecutive sentence is authorized or required], for each crime having the highest crime class, the sentence grid . . . that contains the recommended minimum sentence range.
>
> (*iii*) Unless [a consecutive sentence is authorized or required], the computation that determines the recommended minimum sentence range for the crime having the highest crime class. [MCL 771.14(2)(e)(*ii*) and (*iii*).]

Together, MCL 777.21(2) and MCL 771.14(2)(e)(*ii*) and (*iii*) mean that, where a defendant is sentenced for multiple offenses and consecutive sentencing does not apply, as here, a guidelines recommended range would only be calculated for the highest crime class offense. *People v Lopez*, 305 Mich App 686, 690-692; 854 NW2d 205 (2014); *People v Mack*, 265 Mich App 122, 127-129; 695 NW2d 342 (2005). Because consecutive sentencing did not apply to defendant's convictions of robbery and AWIGBH, to the extent the trial court was required to consider the guidelines when imposing its sentence for the AWIGBH conviction, the applicable recommended sentence range was that for the higher-class offense of robbery, 50 to 200 months. MCL 777.64; *Lockridge*, 498 Mich at 392; *Lopez*, 305 Mich App at 690-692. The trial court correctly calculated the guidelines for the conviction with the highest crime classification, and thus, defendant's 20-year sentence for AWIGBH constituted a roughly 40-month departure. See *Lopez*, 305 Mich App at 692.

All that having been said, we agree with defendant and the prosecution—who concedes error with respect to this issue—that the trial court failed to give adequate justification for its departure. The trial court noted that there were substantial and compelling reasons to depart from the guidelines, and noted that the guidelines did not adequately account for defendant's actions. However, the court did not explain how this was the case, and we note that there is at least some merit to defendant's argument that the factor most heavily relied on by the court—the severity of the victim's injuries—was accounted for in the scoring of offense variable (OV) 3. See MCL 777.33(1)(c). The trial court was required to explain "why the sentence imposed [was] more proportionate to the offense and the offender than a different sentence would have been," and in this case, failed to do so. *People v Dixon-Bey,* 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citation omitted). We also note that the trial court's failure to justify its departure is compounded by the question, which this Court has yet to expressly answer, of "whether a sentence for a conviction of the lesser class felony that is not scored under the

guidelines pursuant to MCL 71.14(2)(e)(*ii*) and (*iii*) could permissibly exceed the sentence imposed on the highest crime class felony and remain proportional." *Mack*, 265 Mich App at 129.

In any event, the trial court's failure to justify the proportionality of its departure sentence is the dispositive issue in this case. Defendant is entitled to resentencing on his AWIGBH conviction.


## VI. UNPRESERVED CLAIMS OF ERROR

Defendant raises several additional arguments in his Standard 4 briefs and his counsel's supplemental brief, none of which are preserved for appellate review because they were not asserted as error in the trial court. *Carines*, 460 Mich at 761-762. Thus, appellate relief is not warranted unless the defendant establishes a plain error (i.e., one that is clear or obvious) affecting his substantial rights (i.e., outcome-determinative), and the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceeding. *Carines,* 460 Mich at 763-764.

## A. STANDARD 4 CLAIMS

First, the record shows that defendant waived any claim of error regarding the wearing of a jail uniform during jury selection by specifically rejecting the opportunity to wear civilian clothing. An accused may be denied his right to a fair trial if required to appear before a jury in jail clothing and his appearance impairs the presumption of innocence. See *People v Lewis*, 160 Mich App 20, 30-31; 408 NW2d 94 (1987); *People v Turner*, 144 Mich App 107, 108-109; 373 NW2d 255 (1985). Consequently, "[a] defendant's timely request to wear civilian clothing must be granted." *People v Harris*, 201 Mich App 147, 151; 505 NW2d 889 (1993). A defendant waives any error concerning his attire unless the issue is raised before the jury is impaneled. *Turner*, 144 Mich App at 109.

On the first day of trial, before the jury venire entered the courtroom for voir dire, defense counsel noted that defendant had been offered civilian clothing to wear but had refused the offer. While defendant initially denied this, after further query by the trial court, defendant confirmed that he wished to proceed dressed in a jail uniform, even in the face of the trial court's admonition not to do so. This record shows that defendant knowingly, intentionally, and voluntarily waived his right to appear in civilian attire during jury selection. See *People v Carter*, 462 Mich 206, 214-215; 612 NW2d 144 (2000). A defendant may not waive objection to an issue in the trial court and later raise it as an error on appeal. *Id*. at 214.

Second, defendant claims that his right to confront the sister of the victim, concerning her testimony about the victim's condition before and after the assault, was violated because he did not have access to the 3,000 pages of the victim's medical records. However, the record shows that defense counsel had access to the medical records and in fact objected to the records being admitted into evidence on the prosecutor's motion. Notably, defendant presents no argument regarding how these medical records would have aided defense counsel's cross-examination of the sister. Counsel did not ask her any questions regarding the victim's condition, but this was an apparent trial strategy so as to not emphasize the effect of the assault on the victim. How to

question witnesses is quintessentially a matter of trial strategy within the discretion of trial counsel. *Carter*, 462 Mich at 218-219; *People v Horn*, 279 Mich App 31, 38-39; 755 NW2d 212 (2008). This Court will not second-guess counsel on matters of trial strategy. *Unger*, 278 Mich App at 242-243. Again, with repsect ot this issue, has not established that plain error effected his substantial rights. *Carines*, 460 Mich at 763-764.

Third, defendant also asserts that he was denied a fair trial because the trial court failed to instruct the jury before presentation of evidence regarding the elements of the charged offenses. The record does not support this claim but rather shows that the trial court did so instruct the jury and similarly instructed the jury after the close of proofs and arguments of counsel. Thus, no plain error is evident. *Id*.

## B. INCONSISTENT VERDICTS

Defendant argues that his convictions of both AWIGBH and felonious assault are inconsistent, and therefore contrary to law. This argument has been accepted by at least one panel of this Court. See *People v McKewen*, 326 Mich App 342, 352; 926 NW2d 888 (2018), leave to appeal held in abeyance __ Mich __; 924 NW2d 553 (2019). Although *McKewen* is pending in our Supreme Court, it still is binding precedent. MCR 7.215(C)(2) and (J)(1). In that case, this Court concluded that the crimes of AWIGBH and felonious assault are fundamentally inconsistent. *McKewan*, 326 Mich App 355-356. Specifically, this Court noted that the latter requires an intent to do great bodily harm less than murder, MCL 750.84(1)(a), while the latter involves and assault in which a defendant specifically *did not* intend "to commit murder or to inflict great bodily harm less than murder," MCL 750.82(1). *Id*. at 352. And, while a jury is free at times to impose inconsistent verdicts for a number of possible reasons, in this case, like in *McKewan*, the jury had no reason to know of the inconsistency between the two statutes because the trial court failed to instruct them of the same. *Id*. at 356.

"[W]hen a defendant is charged with both felonious assault and AWIGBH, the lack of instruction on the negative element [of felonious assault] deprives the jury of knowledge that conviction of both charges would be inconsistent." *Id*. "[W]hen the jury is unaware that its verdict is inconsistent, we should not presume that the jury would have reached the same verdict had it known the full text of the statute under which the defendant is charged." *Id*. Consequently, with *McKewan* in mind, we vacate defendant's conviction of felonious assault.

## C. IMPOSITION OF COSTS

Finally, defendant argues that the trial court failed to provide a sufficient reason for its imposition of costs. We note that "strictly legal challenges to the imposition of fees and costs under MCL 769.1k . . . must be preserved when the trial court imposes the fee." *People v Jackson*, 483 Mich 271, 292 n 18; 769 NW2d 630 (2009). Because defendant did not challenge the imposition of costs before the trial court, as noted above, defendant has not preserved this issue.

MCL 769.1k(1)(b)(*iii*) now provides that the court may assess "any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case . . . ." The Supreme Court Administrative Office (SCAO) recommends that circuit courts calculate costs by multiplying the percentage of the criminal workload by the court's

average actual costs and dividing by the number of criminal cases disposed.  *People v Cameron*, 319 Mich App 215, 225-226; 900 NW2d 658 (2017) (2019).  When the trial court uses a substantially similar formula to assess costs, the costs have a sufficient factual basis.  *Id*. at 226.  In this case, the trial court indicated that it was imposing costs on the basis of the county's average costs of $1,301.  Because the court stated a sufficient basis for imposing costs, which did not need to be separately calculated for defendant's case, defendant has not demonstrated that the trial court clearly erred

We vacate defendant's conviction of felonious assault and his sentence for AWIGBH, but otherwise affirm his convictions and sentences.  We remand for proceedings consistent with this opinion.  We do not retain jurisdiction.


/s/ Michael J. Kelly
/s/ Karen M. Fort Hood
/s/ Stephen L. Borrello

-15-